247 S.W.2d 731 (1952)
MICKELBERRY'S FOOD PRODUCTS CO. et al.
v.
HAEUSSERMANN et al.
No. 42189.
Supreme Court of Missouri, Division No. 1.
March 10, 1952.
Motion for Rehearing or to Transfer to Denied April 14, 1952.
*733 C. Kenneth Thies, St. Louis, for appellants.
Edward W. Tobin, Edward A. Haid, St. Louis, for respondent Fred G. Haeussermann.
Gerwitz, Seegers & Lee and Paul M. Gerwitz, Jr., all of St. Louis, for respondent Adolf G. Ackermann, trustee.
Motion for Rehearing or to Transfer to Court En Banc Denied April 14, 1952.
HOLLINGSWORTH, Judge.
On the 10th day of December, 1945, plaintiffs purchased and now own all of the capital stock of Laclede Packing Company, a Missouri corporation. By this action they seek to recover the sum of $36,945.51, more or less, being the cash surrender proceeds of certain insurance policies issued on the lives of defendants, Fred G. Haeussermann and Adolf G. Ackermann, pursuant to two life insurance trust agreements entered into between former stockholders of Laclede Packing Company and defendants as trustees. The trial court found the issues in favor of defendants and plaintiffs appealed.
Plaintiffs' action is pleaded and based upon the theory that by the terms of the life insurance trusts they, as purchasers of the capital stock of Laclede Packing Company, are entitled to have the trust liquidated and the proceeds distributed to them free of the trust. Defendants contend: (1) that the trust agreements inure only to the benefit of certain beneficiaries and do not inure to the benefit of plaintiffs by virtue of purchase of the stock; (2) that the contracts for the sale of the stock of Laclede Packing Company to plaintiffs did not contemplate that plaintiffs acquire, plaintiffs did not intend to acquire, and the stockholders of Laclede Packing Company did not convey any rights in said trusts; (3) that plaintiffs, by their acts, conduct and declarations, are estopped from asserting any rights therein; (4) that plaintiffs had no insurable interest in the lives of the insured defendants, and for that reason could not acquire any right in the proceeds of the surrendered policies; and (5) that there is a defect of parties.
Plaintiffs, other than Mickelberry's Food Products Company, a Delaware corporation, hold only qualifying shares of stock of Laclede Packing Company. Mickelberry's Food Products Company is the beneficial owner of all of the stock. These corporations hereinafter will be referred to as "Mickelberry's" and "Laclede".
Laclede was organized in 1921. Defendants Haeussermann and Ackermann were among its original incorporators and from that time until the sale of the stock to Mickelberry's on December 10, 1945, were officers and principal stockholders therein.
On August 10, 1937, defendant Ackermann was president and defendant Haeussermann was secretary-treasurer of Laclede. On that date the two life insurance trust agreements involved in this case were executed. These instruments are identical in form, except in one Ackermann is named "Trustee" and the insurance therein authorized to be obtained is to be on the life of Haeussermann, the secretary-treasurer. In the other Haeussermann is named "Trustee" and Ackermann, the president, is named as the person whose life is to be insured. For that reason only one of the agreements need be summarized. The first paragraph reads:
"This Declaration of Trust made this 10th day of August, 1937, by and between all persons, firms, partnerships, and corporations who are or may be the registered common stockholders of Laclede Packing Company, a Missouri corporation, according to its books of record, particularly (names of stockholders) and their successors and assigns, hereinafter called the `Parties of the First Part' and Adolf G. Ackermann, of the City of St. Louis, Missouri, hereinafter called the `Trustee', Witnesseth:"
The trust agreement then provides, in substance:
That the stockholders on demand will advance funds in proportion to a schedule thereto attached with which the trustee is *734 to buy insurance on the life of Fred G. Haeussermann, secretary of Laclede, in such sums as the trustee may elect, payable to trustee Ackermann for the purposes thereinafter provided; and upon advancing additional funds as required, the Trustee shall hold the policies "for the beneficiaries hereinafter provided". Upon the death of insured the proceeds of such policies are to be used, first, to retire outstanding bonds of Laclede, and, second, to purchase stock of Laclede from estate of deceased insured. Such bonds or stocks so acquired shall be held for the benefit of "beneficiaries of this trust" in proportion to their respective interests. The trustee is authorized to borrow against the cash value of said insurance policies to pay premiums and to proportionately charge such loan against the cash value of each beneficiary in the policies upon distribution. If the cash value of any beneficiary's interest is depleted by loans, then any other beneficiary may take over such interest. "Any beneficiary hereunder may withdraw from this trust agreement at any time by selling and assigning his or her interest or equity to any other beneficiary of this trust."
"If, after performance of the Trustee under the above provisions or if there are no bonds or stock of the Laclede Packing Company available for purchase under the above conditions, the Trustee shall distribute free from trust (the net proceeds of the policies) to the common stockholders of record of the Laclede Packing Company on the date of the death of Fred G. Haeussermann, * * * according to the number of shares of common stock held by such stockholders and the respective interest of each beneficiary as hereinbefore provided."
Then follows the clause upon which plaintiffs, as owners of all of the stock of Laclede, base their right to the cash surrender value of the policies: "In the event that the majority of the beneficiaries of this trust, who are the common stockholders of Laclede Packing Company should at any time desire to liquidate this trust they may do so and hereby reserve the right to so do by serving written notice of their desire on the Trustee hereof, whereupon the Trustee shall * * * notify the various insurance companies * * * to cancel said policies and * * * he shall make a pro rata distribution free from trust of all such amounts recovered to the stockholders of record of Laclede Packing Company as of the date of the service of notice to terminate this trust * * *."
Pursuant to the provisions of these trusts, sufficient sums were provided by the stockholders for the purchase of $100,000 of insurance on the life of Ackermann and a like sum on the life of Haeussermann, and the policies involved in this case were purchased. In the policies on the life of Haeussermann the beneficiary was designated: "Will pay to the Insured's: Adolf G. Ackermann, as Trustee, under Trust Agreement dated August 10th, 1937, made by and between Adolf G. Ackermann, et al. and said Trustee." This provision was also in the policies issued on the life of Ackermann, except that Haeussermann was the named trustee.
On January 4, 1938, new stock certificates were issued to the Laclede stockholders. These certificates bore a legend stamped thereon: "This certificate is issued subject to the conditions and restrictions contained in a certain contract dated August 10, 1937, which affects the negotiability of this stock and which contract has been spread upon the minutes of the corporation and will be exhibited by the secretary thereof upon request."
The premiums were paid by checks drawn on Laclede to each of the trustees, who, in turn, remitted to the insurance companies. It was the custom to charge these premiums against Laclede dividends or surplus.
Certain minutes of Laclede and reports made by its auditors were introduced in evidence as tending to support plaintiffs' contention that the insurance trusts were construed by its prior stockholders to have been made for the benefit of succeeding stockholders rather than certain beneficiaries, as contended by defendants. These audit reports and minutes were:
On November 1, 1941, in a certified public accountant's report, made at the instance of Laclede for the year ending October 31, *735 1941, the following excerpt is recorded: "According to the records, dividends on the capital stock, during the period, amounted to $7,584.50 and represent the amount of insurance premiums paid by the company on life insurance policies carried in two life insurance trusts dated August 10, 1937. * * * The beneficiaries, as recited in the copies of the trust agreements submitted to us, were the common stockholders in the company and their successors and assigns."
An audit made by Laclede's auditors on February 5, 1945, some ten months prior to the purchase of the stock by the plaintiffs, recites: "During the year the Company purchased from a stockholder, 55 shares of its own capital stock. * * * By the acquisition of the 55 shares of capital stock the Company acquired an interest in the cash surrender value of the policies of the `stockholders trust agreement' equal to $304.02. The payment of $62.58 above described is therefore treated as an addition to the company's cash surrender value on the policies of insurance on the lives of its officers."
The minutes of a regular directors meeting held on October 26, 1945, less than two months prior to the date plaintiffs purchased all of the Laclede stock, show adoption of the following resolution: "Be It Resolved, that a dividend of $1.13074 per share be paid out of surplus to stockholders of record as of this date, said dividend to be paid to the respective trustees of said insurance trust in proportion to the amounts needed to satisfy the net premiums payable under the policies held thereunder, and
"Be It Further Resolved, that whereas there are fifty-five shares of issued stock held in the treasury of the company, that the company pay the premium on such proportionate share in the amount of $62.19."
Plaintiffs offered to prove by several of the stockholders of Laclede who had signed the insurance trust instruments and who had thereafter sold their stock that they considered that all rights they had in the insurance trusts as stockholders of Laclede passed to their successors as an incident of the transfer of the stock. This offer, upon objection, was denied.
On November 16, 1945, Mickelberry's made a written proposal to the then stockholders of Laclede to purchase all of the outstanding stock (4703 shares) at $200 per share, upon certain conditions, the pertinent ones being that: the balance sheet of Laclede dated September 1, 1945, reflected the true condition of Laclede on that date; upon acceptance and consummation of the transaction, all assets of Laclede, as shown by said balance sheet, would be free of liens; all employment contracts of officers and directors would terminate; Mickelberry's would have sixty days after acceptance to satisfy itself as to titles of Laclede properties and assets; upon notice of Haeussermann and Ackermann of its satisfaction with titles, the transaction should be finally consummated; and upon acceptance Mickelberry's would deposit $50,000 in escrow as earnest money and within ten days after satisfying itself as to the titles it would pay the balance of purchase price.
The offer was accepted by all of the stockholders under date of November 16, 1945, and the earnest money was deposited.
Thereafter, on November 21st, Edward W. Tobin (attorney for defendant Haeussermann in this case), representing Mr. Haeussermann and other Laclede stockholders, wrote Daniel L. Donovan, attorney for and one of the directors of Mickelberry's, advising him of the life insurance trusts and that copies thereof would be exhibited to him and George E. Duwe, president of Mickelberry's, when they were next in St. Louis. This letter also advised that one of Mr. Haeussermann's stock certificates, No. D-44, bore the legend hereinabove quoted relating to these trusts and that he would procure and deliver to Donovan such releases as would be necessary to free the stock of the restrictions referred to in the legend.
Three or four days after writing the above letter, Messrs. Duwe and Donovan came to St. Louis and conferred with Messrs. Tobin, Haeussermann and Ackermann about certain difficulties that had *736 arisen in connection with the consummation of the transfer of the stock.
The version of Mr. Tobin as to what was said at this meeting differs materially with the versions of Messrs. Donovan and Duwe. Mr. Tobin's version is: That he offered to exhibit to and discuss these instruments with Messrs. Duwe and Donovan; that Donovan said he had seen the originals at the Laclede office, was familiar with them and that, "We have no interest in the life insurance trusts. We are purchasing the shares of stock of the Laclede Packing Company, and these life insurance trusts and policies of life insurance not being assets of the Laclede Packing Company, we are not interested in them, and the beneficiaries of the life insurance trusts own the policies of life insurance in the trusts."
Mr. Donovan's version is: That he and Mr. Duwe had gone to St. Louis by special appointment because they had received word that Mr. Ackermann was "trying to get out of the deal"; that when they arrived at Mr. Tobin's office Mr. Ackermann was not as yet present; that Tobin said to Donovan, "I have that life insurance trust, which I wrote to you about", and Donovan said, "Well, Mr. Tobin, there isn't any necessary for my going into that life insurance trust because of the fact that I have already seen and examined a copy of that trust. I am quite satisfied that it doesn't affect us, that the restrictions on some of the stock certificates are not harmful to us. * * * We are here on a much more serious matter * * *, because if Mr. Ackermann is going to continue and not go through with the deal, then is it going to be necessary for me to go ahead and confer with some St. Louis attorney as to whether or not we have a right of specific performance * * *. I am not interested in going into any life insurance trust. Let's get on this deal matter." So Mr. Tobin said, "All right". Mr. Duwe corroborated Mr. Donovan.
Between November 16th and December 10th, Mr. Gerwitz, secretary of and attorney for Laclede, had a conference with Mr. Donovan regarding these life insurance trusts. According to Mr. Gerwitz, Mr. Donovan stated that he "didn't give a damn about the life insurance trust agreement, that they were not buying the life insurance trust agreement and that any grief that ensued would be our grief and not theirs." Mr. Donovan's version was that Mr. Gerwitz was one of two voting trustees holding a considerable portion of Laclede stock for the benefit of Mr. Haeussermann and that a Mr. Turner was trustee for a considerable block of stock belonging to Mr. Ackermann and other stockholders; and that these trustees would not deposit the stock in escrow until certain trustees' fees were paid. He denied the statement attributed to him by Mr. Gerwitz.
On December 7th, Mickelberry's, in accordance with the provisions of the contract of November 16th and the escrow agreement, notified Messrs. Haeussermann and Ackermann that it was satisfied with the titles of the property owned by Laclede and that it would immediately deposit in escrow the balance of the purchase price of the stock, and on the same date advised the escrow agent that it had notified Messrs. Haeussermann and Ackermann that it was satisfied. On December 10th, the parties to the contracts met in the office of the escrow agent, where all documents were examined and accepted and the certificates of stock were delivered and the transaction was consummated. On the same day, at a special meeting of the Laclede Board of Directors, resignations of the old board and old officers were received and accepted and new directors and officers selected by Mickelberry's were named to replace them.
Mr. Duwe admitted that at the time the offer to purchase the Laclede stock was made on November 16, 1945, he had no knowledge of the life insurance trusts. Laclede's balance sheet of September 1, 1945, referred to in the offer to purchase, made no reference to them. Neither the title papers submitted to Mickelberry's for examination, nor the escrow agreement or the final acceptance notices given by Mickelberry's to defendants or the escrow agent mention the trusts.
*737 On December 14th, 15th and 24th, Mickelberry's wrote Messrs. Haeussermann and Ackermann, both individually and as trustees, stating that being the owner of all of the stock of Laclede it demanded, in accordance with the terms of the trust agreements, that the insurance policies be surrendered and that the cash surrender values so received be distributed as the trusts provide, "to the stockholders of record of Laclede Packing Company as of the date of the service of the notice to terminate this trust".
The cash surrender value of the policies was obtained by the trustees, but they refused to pay the proceeds so realized to plaintiffs. Thereafter, an agreement was made between plaintiffs and defendants whereby these proceeds were deposited in escrow to await judicial determination as to the ownership thereof.
The trial court filed a memorandum of its conclusions of fact and law, which shows the theory upon which the case was tried and decided. It is much too long to set forth in its entirety, but, in substance, the court found that:
(a) Even though the trust insurance premiums were paid out of Laclede surplus, yet it was recognized that the agreements were personal to the stockholders. They constituted no part of the assets of Laclede. No part was payable to Laclede save as owner of company stock. The trusts could be liquidated at any time by the stockholders of record.
(b) Transfer of any beneficial interest in the trusts was not contemplated by any of the parties in the purchase of the stock by Mickelberry's. The contract of sale itself did not convey any interest therein unless the transfer of the stock accomplished that result.
(c) "There was no evidence of any assignments of the beneficial interests in the trusts prior to the sale of the stock to plaintiff except by a transfer of the stock. There is no evidence that any stockholder had assigned his beneficial interest while still retaining his stock."
(d) "The trust agreements generally contemplate an assignment or sale of the stock as sufficient to convey the beneficial interest involved." The course of conduct of former stockholders who transferred their stock indicates such construction by them.
(e) "But even though the trust agreements contemplated an assignment of the beneficial interest in the insurance policies with a sale of stock it does not follow that a sale of the stock necessarily produced that result in all cases. Neither can it be held that the beneficial interest in the same is incidental to and interwoven with the ownership of the stock.
"As pointed out by the defendants the plaintiffs never had, nor did they acquire, any insurable interest in the lives of the insured. The sale of the stock to plaintiffs did not keep the insurance trusts nor the policies alive as to them. * * *
"Consequently the plaintiffs could acquire no right to continue the insurance trusts, since under the terms of the contract the insured's interests in the company were ended, and therefore, plaintiff had no insurable interest in the continuation of the policies, as pointed out in the above authorities. * * *
"The contract of purchase ended the trusts, and the then existing stockholders, in the opinion of the Court were entitled to the proceeds arising therefrom. * * *"
(f) As to the differing versions of the conversations between Messrs. Donovan and Duwe and Messrs. Tobin and Gerwitz, the court found "in favor of defendants but holds that what was said was nothing more than an expression of an opinion of the plaintiffs' lawyer and is in no way binding on plaintiffs."
It is apparent that the trial court, although finding that "the trust agreements generally contemplate an assignment or sale of the stock as sufficient to convey the beneficial interest involved", nevertheless determined that the sale of the stock failed to do so in this instance, primarily because of its further finding that "plaintiffs never had, nor did they acquire, any insurable interest in the lives of the insured". During the trial this theory was urged upon the court at great length.
*738 Since the trial of this case in the court below, this court, in the case of Butterworth v. Mississippi Valley Trust Co., 362 Mo. ___, 240 S.W.2d 676, has adopted the opposite (and, we may say, the generally prevailing) rule. There we said, 240 S.W.2d, loc. cit. 683: "The decided trend of adjudications unquestionably is to establish the rule that an insurable interest in the insured by the assignee of a policy of life insurance is not essential to the validity of the assignment if the party to whom it was issued in good faith had an insurable interest, and if the assignment was in good faith and not made to cover up a gambling transaction. We unequivocally approve that rule." See also Minnesota Mut. Life Ins. Co. v. Manthei, Mo. App., 189 S.W.2d 144, 151.
It must be conceded that when the policies were issued the stockholders of Laclede had an insurable interest in the lives of both insureds. It is also clear that when plaintiffs contracted to buy the Laclede stock they had no intent of wagering on the lives of the insureds; this for the reason that they did not know the policies were in existence. Furthermore, almost immediately upon acquisition of the stock, plaintiffs directed the trustees to surrender the policies, thereby removing any possible contention that they were taking or holding them as a wager on the lives of the insureds. Thus, the rights asserted by plaintiffs in this case involve no issue of insurable interest. They involve only the rights of plaintiffs to the surrendered and accrued value of the policies. When the insurance companies paid over that accrued value to the trustees, the policies were terminated. The sole question in this case is whether these proceeds inure to the benefit of plaintiffs as transferees of the stock. The policies of insurance were not assets of the corporation and neither party contemplated the transfer thereof as such. Plaintiffs rely upon their rights under the insurance trusts.
The trust agreements were made "by and between all persons, firms, partnerships and corporations who are or may be the registered common stockholders" of Laclede "and their successors and assigns" as parties of the first part, and defendant trustees as parties of the second part. Another clause in these agreements is clearly indicative that they were made for the benefit of Laclede stockholders of record at the time of the termination of the trusts, although that clause never became effective. It is the clause hereinabove quoted providing that upon the death of the insureds the net proceeds of the policies shall be distributed "free from trust to the common stockholders of record of Laclede on the date of the death of the insured".
But the controlling, overriding clause of these agreements, determinative of plaintiffs' right to the proceeds of these policies, is the clause: "In the event that the majority of the beneficiaries of this trust, who are the common stockholders of Laclede Packing Company should at any time desire to liquidate this trust they may do so and hereby reserve the right to so do by serving written notice of their desire on the Trustee hereof, whereupon the Trustee shall * * * notify the various insurance companies * * * to cancel policies and * * * he shall make a pro rata distribution free from trust of all such amounts recovered to the stockholders of record of Laclede Packing Company as of the date of the service of notice to terminate this trust * * *." That clause is free from ambiguity. By its express terms it designates the stockholders of record of the date of the notices to terminate the trusts as the beneficiaries entitled to distribution of these proceeds. The notices to terminate the trusts were served on December 14th, 15th and 24th, 1945. On those dates Mickelberry's was the owner of all of the Laclede stock.
When the language of a contract is plain, there can be no construction because there is nothing to construe. State ex rel. National Life Ins. Co. v. Allen, 301 Mo. 631, 256 S.W. 737; Wood v. Utter, 229 Mo.App. 309, 77 S.W.2d 832. Neither is a contract rendered ambiguous by the fact that the parties do not agree upon the proper construction to be given it. National Pigments & Chemical Co. v. C. K. Williams & Co., 8 Cir., 94 F.2d 792.
*739 Were plaintiffs as transferee stockholders of record of Laclede on the date the notices to terminate the trusts were served invested with the rights reserved to and for the benefit of such stockholders as an incident of their purchase of the stock? Or must there have been an express assignment to them of the beneficial interests accruing under that clause? Defendants contend that a provision in the trust agreements reading: "Any beneficiary hereunder may withdraw from this trust agreement at any time by selling and assigning his or her interest or equity to any other beneficiary of this trust" restricts that right to transfer his "interest or equity" to an express assignment as distinguished from its incidental transfer by sale of his stock. We do not construe that clause to refer to the facts here under consideration. That clause was made for the benefit of any stockholder who wished to continue to hold his stock free of obligation to contribute to the payment of premiums. No contention is made it was ever exercised by any stockholder.
Ordinarily, a sale of shares of stock made in good faith transfers to the vendee all rights and liabilities incident to ownership of the stock. "The vendee does, in all cases of sale and transfer to him, take the shares with a right to all the benefits attaching to or growing out of them; and this from the mere fact of the sale and transfer." Johnson v. Underhill, 52 N.Y. 203, 212; Jermain v. Lake Shore & Mich. So. Ry. Co., 91 N.Y. 483. See also Simonton v. Dwyer, 167 Or. 50, 115 P.2d 316, 318; Cochrane v. Interstate Packing Co., 139 Minn. 452, 167 N.W. 111; 18 C.J.S., Corporations, § 441, p. 1073; Fletcher, Cycl. Corporations, Perm.Ed., Vol. 12, p. 233.
But defendants contend that plaintiffs did not acquire the beneficial interest accruing under the trust agreements because there was no mutual intent in the minds of the parties to transfer them. In support of that contention they cite several authorities stating that in contracts of sale there must be a meeting of the minds on all essential details as to what is being sold by the seller and purchased by the purchaser. See Williston on Sales, Rev.Ed., Vol., 1, § 5, p. 6; 6 C.J.S., Assignments, § 41, p. 1089, § 64, p. 1118, § 85, p. 1142. Also see 6 C.J.S., Assignments, § 84, p. 1142, which states: "An assignment of one contract does not operate as an assignment of another independent and original contract, although connected with the first contract; * *." We do not think that principle is applicable here.
The answer to that contention is found in the express language of the trust agreements. By those provisions the original parties to the agreements expressly declared that the benefits therein provided extended to and became vested in their successors. No express assignment is required or contemplated. The successors in title to the stock are made the beneficiaries by the agreements themselves. These agreements must be construed as they are written; otherwise the trustees could never make distribution of these funds, for the simple reason that distribution must be made to the stockholders of record of the date on which the trusts were terminated, not to assignees of rights under the trusts.
We hold that the benefits accruing under the insurance trust agreements passed to plaintiffs as an incident of the purchase of the stock, and that plaintiffs had the right to liquidate the trusts therein created and to receive from the trustees the net proceeds of the surrendered insurance policies, unless plaintiffs by their acts, declarations and conduct are estopped to assert those rights.
The right to transfer of the stock was acquired by plaintiffs when their written offer to purchase it was accepted on November 16, 1945. On that date, therefore, plaintiffs acquired equitable title to the stock and, of course, they also acquired the equitable title to all rights incidental thereto, including those provided in the insurance trusts. It was not until eight or ten days after these rights had become fixed by the contract of sale that the conversations occurred upon which defendants base their claim of estoppel. In its real sense, estoppel is not involved. The effect of defendants' contention is that, after acquiring *740 these rights, plaintiffs, by a separate oral contract, without consideration, relinquished or, in effect, gave them back to the sellers. That these parties were dealing at arms length is abundantly shown throughout the record. We cannot believe plaintiffs voluntarily relinquished anything. Rather do we believe, as did the trial court, that Mr. Donovan's statements can be construed as "nothing more than an expression of an opinion of the plaintiffs' lawyer and is in no way binding on plaintiffs". See Sudekum v. Fasnacht's Estate, 236 Mo. App. 455, 157 S.W.2d 264, 266.
Finally, defendants contend there is a defect of parties precluding the entry of a valid judgment against them in this case. They assert that all prior stockholders who have contributed to the payment of premiums as they became due on the policies of insurance involved are necessary and indispensable parties to these proceedings. That statement is surprising. By it defendants say, in effect, that any stockholder who contributed to the payment of premiums became invested with a right to share in these trusts. Heretofore, defendants have maintained that only the original parties to the trusts and subsequent holders of an express assignment from them are entitled to share therein. We do not think that defendants are in any position to make this assertion.
When the last amended petition was filed, defendants' motion to dismiss, in referring to this claimed error, stated only "that it appears from the said amended petition that there is a defect of parties defendant." The motion did not point out to the court wherein the defect lay. Defendants did not take the position of neutral trustees and stakeholders and ask that other possible claimants be brought in. The record shows that defendants acted as agents and attorneys in fact for all Laclede stockholders of record in signing the contract of sale on November 16, 1945. They signed it not only in their own behalf but as agents of all other stockholders. There could be no other parties in interest except, possibly, former stockholders who had theretofore disposed of their stock. Plaintiffs offered to prove by several of these that after disposing of their stock they claimed no interest in the trusts. The evidence is well nigh conclusive that prior to November 16, 1945, no former stockholder ever asserted any such claim. Since that date only one, the American Packing Company, has done so. That company was represented by Mr. Tobin, one of counsel in this case. On December 1, 1945, it wrote, not to the trustees, but to Laclede, demanding return of the portion of its dividends for the years of 1941, 1942 and 1943 that Laclede had applied to the payment of premiums on the insurance policies involved in this case and stated in that demand that American Packing Company had an interest in these policies. It might well be inferred that this claim "germinated" subsequent to the contract of sale of November 16, 1945.
We hold that when defendants assumed to defend this action on its merits without any request that any other parties be brought in they must abide the final judgment rendered in the cause.
The judgment is reversed and the cause remanded with directions to the trial court to enter a decree in conformity with the views herein expressed.
All concur.