Robert L. KALEN et al., Appellants,

v.

Roland P. STEELE, d/b/a Better Built Homes, Inc., and Better Built Homes, Inc., a Corporation, Respondents.

No. 23187.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Robert S. Burns, Kansas City, for appellants.

Roland P. Steele, pro se.

HUNTER, Presiding Judge.

Plaintiffs, Mr. and Mrs. Robert L. Kalen, sue defendants, Roland Steele, an individual, and Better Built Homes, Inc., a corporation, housebuilders, alleging in their petition that on October 3, 1957, plaintiffs and defendants entered into a written agreement by which defendants agreed to build a described home for plaintiffs on plaintiffs' lot for a total construction cost of $15,993.30 plus a contractor's fee of $1,599.93, for a total cost of $17,593.23; that defendants partially performed the work so that plaintiffs were able to occupy the house but have wrongfully refused to complete many listed items of work covered by the contract. Additionally, plaintiffs' petition states that although plaintiffs have paid defendants all that is owed them under the contract, defendants have presented bills to plaintiffs as construction costs of the house totalling $23,208.91; that of this sum $654.49 was for authorized extras over and above the original contract price of $15,993.30, leaving a balance of $6,561.12 in cost of construction above the original contract price; that the bills for this $6,561.12

for labor and materials remain unpaid, and that mechanics' liens therefor have been filed. Plaintiffs seek damages for these matters in the sum of $7,161.12.

In their answer defendants denied all this and counterclaimed for $312.59 which they allege is 10% of the amount of agreed extras and is thus owed as additional contractor's fee under the terms of the contract.

The case was tried to the jury. Plaintiffs' evidence was to the following effect: They learned of defendant Steele, a housebuilder, and his company through advertisements in the newspaper. Plaintiffs had a rough sketch of the house they wanted built. They contacted Mr. Steele, discussed the proposed house, its cost and the types of materials to be used in building it with him. He told them that to give them a positive contract figure he would have to have the plans drawn up by an architect. Mr. Steele then suggested plaintiffs employ a Mrs. Peters, an architect he knew, and stated that if he was presented definite plans he could give plaintiffs a definite figure that would be the price of the house. With Mr. Steele frequently present to aid and advise, Mrs. Peters drew the house plans, a copy of which was given to Mr. Steele.

On October 3, 1957, Mr. Steele presented them with a contract to which was attached a blue print copy of the house plans mentioned and a cost sheet or a list of the cost of the items and labor necessary to construct the house. These documents were introduced in evidence. Plaintiffs considered all three documents together to be the contract. Plaintiffs had never seen the contract or cost sheet before. Without objection Mrs. Kalen testified: "Q. When he presented these to you what did he tell you they were? A. He told us this was the cost of the house * * * and this was the contract. * * * Q. Did he tell you that that would be the full price of the building or not? A. Yes, sir, he did. This was to be the price." Plaintiffs care-

fully examined the contract and the attached plans and cost sheet, and signed the contract.

Contending that the contract called for a fixed total price of $17,593.23 plaintiffs caused that sum to be paid to defendants, plus an additional $654.49 in "extras" authorized by plaintiffs. However, defendants presented to plaintiffs an additional $6,561.12 in construction costs as unpaid. At the close of plaintiffs' evidence this figure was amended by defendants' counsel to $4,191.51.

According to plaintiffs' evidence, mechanics' liens were filed against the real estate for this added sum. Plaintiffs asked defendants to pay the $4,191.51 but defendants refused to do so. Plaintiffs had paid $3,283.58 on these liens at the time of trial. Plaintiffs moved into the house on January 25, 1958. They incurred an additional $969.72 in expenses for items and work they claim it was defendants' obligation to have furnished under the contract. These included such things as putting in some drain tile, some guttering, ornamental iron work, a short sidewalk, seeding, sodding and landscaping.

Plaintiffs also adduced evidence that they had deposited a sum of money in escrow to pay certain of the building costs and that defendants had so drawn on that account as to use up $582.87 to which defendants were not entitled under the contract and the prices it established for the items involved.

At the close of plaintiffs' evidence defendants filed a "Motion For Interpretation of the Contract" asking that the court determine and declare that the contract was not one for a fixed price. The trial court sustained this motion. Defendants then moved for a Directed Verdict which the court also sustained. Plaintiffs have appealed from the resultant judgment *for* defendants upon plaintiffs' petition assigning as error the trial court's action in sustaining these two motions. While the judg-

ment entered is not too clear it apparently also is *against* defendants on their counterclaim, and defendants not only have not appealed but also have not appeared on this appeal by plaintiffs nor favored us with a brief.

Plaintiffs in their brief rest their charge of error of the court having wrongfully directed a verdict for defendants on plaintiffs' petition, on the single contention that the court erroneously interpreted the contract not to be one for a fixed price regardless of what the actual cost of construction was to the contractor. We limit ourselves to a consideration of that contention.

If the contract may reasonably be construed in accordance with plaintiffs' belief that it was for a fixed price of $15,993.30 plus a 10% contractor's fee of $1,599.93 thereon together with the cost of authorized extras, the trial court did err in its direction of a verdict for defendants, and it will be necessary to order a new trial. If, however, as defendants contended at the trial, the contract was unambiguous and did not establish a fixed price but obligated plaintiffs to pay for the actual construction costs of the house plus a 10% contractor's fee, plaintiffs tacitly concede they are not entitled to any ultimate recovery and are content to let the judgment stand.

Thus, whether the trial court erred is determined by the meaning of the contract. Although we will refer to additional provisions of the contract in later discussion we believe it helpful to set out sections 4 and 5 at this time:

"4. Owners agree to pay the Contractor the sum of ten percent of construction cost estimated to be *$15,999.30,* Contractor's fixed fee being, *$1,599.93,* payable as follows:

"(a) *$533.31* ⅓ upon execution of this Agreement.

"(b) *$533.31* ⅓ when the building is ready for sheet rock.

"(c) *$533.31* ⅓ within thirty (30) days of completion of the contract and work hereunder and acceptance by Owners.

"5. Owners agree to pay Contractor in current· funds all costs necessarily incurred for the proper prosecution of the work and paid directly by Contractor, with respect to the following:

"(a) All labor, including Social Security, Old Age Benefits and other taxes related thereto.

"(b) All permit fees.

"(c) All materials, supplies, equipment and transportation required by Contractor for the proper execution of the work.

"(d) All sub-contracts."

The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone, and it becomes the duty of the court and not the jury to state its clear meaning. McFarland v. Gillioz, 327 Mo. 690, 37 S.W. 2d 911; National Corporation v. Allan, Mo. App., 280 S.W.2d 428(3). A court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language for there is nothing to construe. Mickelberry's Food Products Co. v. Haeussermann, Mo.Sup., 247 S.W.2d 731 (5). It is only where the contract is ambiguous and not clear that resort to extrinsic evidence is proper to resolve the ambiguity. See 17 C.J.S. Contracts § 321, p. 749; 12 Am.Jur., Contracts, Section 229, page 753.

A contract is not rendered ambiguous by the fact that the parties do not agree upon the proper construction to be given it. Mickelberry's Food Products Co. v. Haeussermann, supra, 247 S.W.2d 731 (6). A contract is ambiguous only when

it is reasonably susceptible of different constructions. In determining whether or not there is such an ambiguity as calls for construction, the whole instrument must be considered. Writings made a part of the contract by annexation or reference are to be considered in determining whether or not it is ambiguous.

■ Presumptively, the intent of the parties to a contract is expressed by the natural and ordinary meaning of the language referable to it. Even seeming contradictions must be harmonized away if that be reasonably possible. State Mutual Life Assur. Co. of Worchester v. Dischinger, Mo.Sup., 263 S.W.2d 394(5); Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S.W. 151, 155.

■ In the case before us we believe the contract to be clear and unambiguous. It provided that the contractor was to "furnish all of the materials and perform all of the work in exact accordance with the plans" for which he was to be paid "ten percent of construction cost estimated to be $15,999.30, contractor's fixed fee being $1,599.93 * * *." This was a clear provision for a fixed fee of $1,599.93 for his services as contractor. It was to be paid in installments of ⅓ each and was not to vary according to the construction cost of the house but was to remain fixed at $1,599.93.

Additionally, as provided by Section 5 of the contract, "Owners agree to pay contractor in current funds all costs necessarily incurred for the proper prosecution of the work and paid directly by contractor * * * (a) all labor * * *, (b) all permit fees, (c) all materials, supplies, equipment and transportation * * *, (d) all sub-contracts."

Section 6 provided "Reimbursement of (these) expenses * * * shall not include any of the following: (a) contractor's salary, (b) salary of any person employed in the main office of contractor, (c) overhead or general expenses."

Section 7 provided "Payment for expenditure by contractor shall be as follows: (a) An advance of $1,000.00 shall be made upon the execution of this agreement, to be expended by contractor in accordance with the provisions as recited in paragraph 5. (b) Upon presentation by contractor to owners of receipts for payments and lien waivers made in accordance with paragraph 5 hereof, owners shall reimburse contractor for such expenditures made."

Thus, Section 5 contains the clear and unequivocal statement the owners agree to pay the contractor all costs of building the house, including labor, material and subcontracts. There is no agreement that owners are to pay a fixed price for the cost of construction of the house other than the mentioned fixed fee for the services of the contractor. Sections 6 and 7 further bear out our conclusion that Section 5 does not provide for a fixed price regardless of the actual cost to the contractor for the construction of the house.

In this conclusion to be changed as a result of considering the "cost sheet" attached to and a part of contract. We think not. The cost sheet obviously is the contractor's estimate of what the cost of the listed items of material and labor to be used in constructing the house will be. It is the basis for the figure used in the contract in Section 4 for the determination of a fixed fee of the contractor for his services. It does not contradict, modify, change or make uncertain the clear, unequivocal provisions of Section 5 which provide, in addition to the fixed contractor's fee contained in paragraph 4, for the contractor to be reimbursed all his necessary expenses for material, labor, etc., in constructing the house. Since there was no agreed limit as to price the fact that the actual cost exceeds that contemplated by the parties is no ground for charging such excess against the contractor. See 17 C.J.S. Contracts § 367b, p. 827.

As the contract is clear and unambiguous it was for the trial court, and not for the

jury, by appropriate action to declare its plain meaning. This the trial court in effect did in its direction of a verdict for defendants.

Since plaintiffs-appellants tacitly concede they are not entitled to any ultimate recovery unless the contract may be viewed as providing for a fixed price rather than for the actual construction costs, we affirm the judgment.

All concur.