James M. THURMAN, Plaintiff, Respondent,

v.

**K. L. KOENIG REALTY COMPANY,**
Defendant, Appellant.

No. 32717.

St. Louis Court of Appeals.

Missouri.

Dec. 19, 1967.

————◆————

Thurman, Nixon, Smith & Howald, Louis Jerry Weber, Hillsboro, for defendant-appellant.

Dearing, Richeson, Weier & Roberts, John A. Schneider, Hillsboro, for plaintiff-respondent.

RUDDY, Judge.

Plaintiff brought this action in three counts to recover sums he claims are due him for various services rendered. He received a jury verdict on all three counts and defendant appeals from the judgment entered by the trial court.

COUNT I. Plaintiff in this count seeks compensation he claims is due him under a written contract whereby he was employed as Sales Manager by defendant. We state some of the antecedents before discussing the contract and plaintiff's claim.

Defendant company was engaged in a general real estate business and began business as a corporation on January 1, 1964. Kurt L. Koenig was the principal stockholder and president of the company. He took no commissions, but according to financial statements did draw a salary. Koenig in describing the services he rendered to the company said that he helped the salesmen procure the listings, taught classes for new salesmen and conducted sales meetings. Although the corporation was in existence from the first of January, 1964, the company did not have the Grand Opening of its offices until February, 1964. The first four or five weeks of the year were devoted to procuring listings of properties for sale. The record is not clear as to when plaintiff began his employment with the defendant company as a real estate salesman; however, it is obvious from the record that such employment started sometime prior to June 1, 1964. His compensation as a real estate salesman was strictly on a commission basis. A salesman of the company got twenty-five percent of the commission for obtaining the listing of the property and a selling salesman got thirty percent of the total commission and if the selling salesman also obtained a listing for the property he got a total of fifty-five percent of the total commission received by the company. Plaintiff was paid all of the commissions due him (except the one claimed in Count 2) on listings obtained and sales made as a real estate salesman. He offers no complaints in this respect. He received his commissions as a real estate salesman while operating under the contract hereinafter referred to. As a matter of fact he received commissions for listings and sales consummated after the termination of his employment, September 30, 1964.

Under a contract effective June 1, 1964 plaintiff began employment as Sales Manager for the defendant company. This contract was in writing and under its terms plaintiff was "to act as the Sales Manager of the Company, from the first day of June 1964, and thereafter until this agreement shall be terminated by either of the parties hereto giving to the other party one months' notice in writing of such intended termination." The agreement thereafter provided that plaintiff would devote the whole of his time during the business hours of the company to the business of the company. The fourth paragraph of the con-

tract, pertinent to our discussion, reads as follows:

"The Sales Manager shall be entitled by way of remuneration for his services a commission of Fifteen Percent (15%) of the net profits of the company in each year; such net profits shall be certified by the auditors of the Company and their certificate shall be conclusive. The aforesaid audit of the Company's Books shall be made as soon as reasonably possible, after the first of each year."

On August 30, 1964 plaintiff notified the defendant company that he would terminate his employment as Sales Manager on September 30, 1964. Plaintiff testified that he performed all of his duties as Sales Manager during the four month period and that during this time he had twelve to fourteen salesmen working under his direction. He was in charge of their activities. Kurt Koenig, the President of defendant company, admitted at the trial that nothing had been paid to plaintiff for his duties as Sales Manager.

The attorney who drafted the contract was produced as a witness by defendant and he testified that when he "wrote" the contract both parties were present. All of his testimony came in without objection. When he was asked concerning a provision about the fifteen percent commission and how it was arrived at, he answered, "I asked them both about the fifteen per cent at the end of the year. I said what do you mean, a year from the date of the contract or the calendar year. They said the calendar year." Again the witness said, "I explained the contract was from June 1st to the end of the calendar year and when was the audit to be made. The fifteen per cent, how determined? They said for the calendar year." Again when he was asked how the fifteen percent commission was to be calculated, he answered, "Supposed to be fifteen per cent of the yearly basis, * * *."

When Kurt Koenig testified he was asked if there was any discussion about the commission and how the fifteen percent would be broken down and how plaintiff was to be paid, he answered, "Yes, there was." Thereafter, there was an objection lodged by plaintiff contending that the contract speaks for itself as to the manner of payment and further contended that there was no ambiguity in the contract stating that "the fifteen per cent is plainly spelled out." Defendant contended the contract was ambiguous and the testimony was offered by way of explanation. Thereafter, the court overruled plaintiff's objection and permitted evidence relative to what was said. The witness testified, "Jim (plaintiff) and I instructed Mr. Evans to write a contract whereby Mr. Thurman would receive fifteen per cent of the profit over a period of a year. We specifically stated a year, due to the fact that real estate contracts overlap each other. It is virtually impossible to break it down into months. * * *" The witness further testified that the audit was made and the company was prepared to show the figures to Mr. Thurman.

Bernard J. Menkhaus testified that he was an accountant and kept the books for the defendant company. He established the bookkeeping system and for a good portion of the year 1964 made all of the entries. The books were kept on a cash receipts and disbursement basis of accounting. He identified plaintiff's Exhibit 4 as a profit and loss statement prepared by him for the four months ending September 30, 1964 and stated that the exhibit accurately reflected the income and disbursements of the defendant company for the period from June 1, 1964 to September 30, 1964. The net profit shown on said Exhibit 4 for the four months ending September 30, 1964 was $11,402.97. This was the net profit after deducting as an item of expense salaries paid to Kurt L. Koenig, President of the company, in the amount of $6,857.12. Plaintiff offered this exhibit in evidence and it was admitted without any objection on the part of the defendant.

During the examination of Kurt Koenig he testified that he caused an audit to be made for the calendar year 1964. Witness' attention was called to a profit and loss statement for the calendar year 1964 prepared by Menkhaus, the auditor. This statement was designated as defendant's Exhibit A. Thereupon, counsel for plaintiff objected to any evidence with regard to any profit and loss statement for the entire year 1964, stating, " * * * It is only the four month period that is in question here." Thereafter, a colloquy followed between the court and counsel, wherein counsel for defendant called the court's attention to the terms of the contract and then said, " * * * It is set up on a yearly basis. They are not going to take the position here this man is entitled to fifteen per cent for a four month period. He terminated this contract. * * *" Plaintiff's counsel then said, "I think we are entitled to fifteen per cent of profits accruing during the time the man worked." Thereafter, the court sustained the objection of plaintiff's counsel. Thereupon, counsel for the defendant made an offer of proof to the effect that defendant's Exhibit A, the profit and loss statement for the calendar year 1964, as prepared by Menkhaus, the auditor, showed the net profits for the year as $2,849.99. The court sustained the objection to the offer of proof. Defendant's Exhibit A, the profit and loss statement for the calendar year 1964, shows as an expense charged against income an item for officer's salaries paid to Kurt Koenig of $12,000. At the conclusion of defendant's case defendant's counsel again offered defendant's Exhibit A. The court again denied the offer and admission in evidence of the exhibit.

Plaintiff in his case and during his examination, was asked, "Q. Did you at any time have any conversation with Mr. Koenig about whether or not he was to be paid a salary out of the business before your fifteen per cent was to be deducted? A. He said he was taking nothing out for himself. * * * He said he was taking no salary for himself. All he was taking was rent for the building, paying himself rent." Plaintiff said he had no knowledge until the morning of the trial that Kurt Koenig was claiming a salary out of the business. Kurt Koenig, in his testimony, did not deny having this understanding with plaintiff.

The court gave the following Instruction No. 3:

"Your verdict will be for the plaintiff on Count I of plaintiff's petition if you believe:

"1. Mr. Thurman and the defendant realty company entered into the contract identified as plaintiff's Exhibit I; and

"2. Plaintiff, Mr. Thurman, performed all of his duties as sales manager for defendant from June 1, 1964 until September 30, 1964; and

"3. Plaintiff, Mr. Thurman, was not paid for such services.

\*      \*      \*      \*      \*      \*

## INSTRUCTION NO. 4

"If you find in favor of plaintiff on Count I, you will award plaintiff as damages a sum computed as follows:

"1. You will ascertain the amount of net profit from the operation of K. L. Koenig Realtors, Inc., in accordance with the evidence, from June 1, to September 30, 1964.

"2. If you believe plaintiff and defendant agreed that no salary was to be paid Mr. Koenig before plaintiff's compensation was computed, you will not make any deduction from profits for Mr. Koenig's salary.

"3. You will then compute fifteen per cent of the total found by you and render your verdict in that amount on Count I."

The jury returned a verdict on Count I in favor of the plaintiff in the amount of

$2,739. This amount represented exactly fifteen percent of the total of the net profit for the four months period ending September 30, 1964 in the amount of $11,-402.97 as reflected on plaintiff's Exhibit 4 and the officer's salary shown on plaintiff's Exhibit 4 of $6,857.12, totaling $18,-260.09.

Defendant contends the trial court erred in refusing to admit its Exhibit A, which was the profit and loss statement for the calender year 1964 prepared by the auditor. We think defendant's Exhibit A should have been admitted but not for the reason asserted by defendant. Defendant also contends the trial court erred in giving Instruction No. 4 because of paragraph one, which it contends was the equivalent of directing a verdict in favor of plaintiff's method of computation. We agree it was error to give the instruction but for a reason other than that assigned by defendant.

■ It will be noted that during the trial defendant contended the contract was ambiguous, whereas, plaintiff contended it was not ambiguous. The part of the contract in question is paragraph 4. We think the entire contract is free of ambiguity. It clearly and expressly provides that plaintiff's remuneration was to be computed on the basis "of the net profits of the company *in each year,*" and not on the basis of any four month period or any other period. The contract was for fifteen percent of the net profit derived from business in the calender year. The calender year profit was to be the basis for the computation and not the profit for any other specific period. Plaintiff, astutely, seeks to use the profit for the four months period as the basis for computation. The contract does not so provide. The obvious intention of the parties in providing for the computation to be based on the net profit "in each year" was to provide not only for the profitable months and periods of the calender year but also for the periods of losses and less profits.

■ The contract was not terminated by the defendant but was terminated voluntarily by the plaintiff. Under the circumstances and under the contract the computation of plaintiff's remuneration must be measured by the net profit shown on defendant's Exhibit A for the calendar year 1964 and because of the termination of plaintiff's employment before the end of the calendar year 1964 his remuneration should be based on a proportionate share of the 1964 profits. Spelled out this would be fifteen percent of one-third of the profit for the calendar year 1964. We say the profit should be computed on a calendar year basis because paragraph 4 of the agreement provides that the audit shall be made as soon as reasonably possible after the first of each year. This obviously calls for a calendar year audit. We also point to the provision that declares that the net profit as certified to by the auditor shall be conclusive. Likewise we are aware that the court admitted intrinsic evidence relative to the preparation of this contract. None of this testimony tends to vary the terms of the contract as we find them to be and all of said testimony seems to be in harmony with our interpretation.

■ When the language of a contract is plain there can be no construction because there is nothing to construe. Mickelberry's Food Products Co. v. Haeussermann, Mo., 247 S.W.2d 731. Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone, and it becomes the duty of the court and not the jury to state its clear meaning, Kalen v. Steele, Mo.App., 341 S.W.2d 343. We think the trial court erred in not admitting defendant's Exhibit A. Further, we think the trial court should have directed a verdict in favor of plaintiff for the amount we hereinafter compute.

■ It will be noted that in plaintiff's testimony he contended that he and Mr. Koenig had a supplemental agreement to the written contract that the salary paid Koenig was not to be computed in deter-

mining plaintiff's remuneration under the contract. This agreement was submitted in paragraph 2 of Instruction No. 4 for the jury's consideration and it is obvious from the jury's verdict that it found in favor of plaintiff on this issue. We have pointed out heretofore that defendant offered no evidence in opposition to the alleged agreement submitted in paragraph 2 of Instruction No. 4 and also in this court defendant raises no issue or complaint about submission of this agreement to the jury. In the absence of a complaint it is apparent that defendant concedes the existence of the agreement that Koenig's salary was not to be deducted from the profit for the calandar year 1964 and we shall so treat it as conceded.

In view of the interpretation we place on the written contract and the supplemental oral agreement concerning Koenig's salary plaintiff should have recovered under Count I, the sum of $742.50 computed as follows: 15% of one-third of the total of the 1964 profits ($2,849.99) and Koenig's salary for 1964 ($12,000).

COUNT II. Plaintiff obtained from Jack Hoelzer a listing to sell a lot. Apparently Hoelzer had agreed to build a dwelling on said lot for any purchaser. On September 20, 1964, plaintiff obtained a contract signed by Robert H. and Marilyn H. Frazier as purchasers and Hoelzer as seller, whereby Hoelzer agreed to build a dwelling on his lot and to sell the lot and the dwelling to the purchasers, all for the sum of $13,700. As pointed out in Count I, if the selling salesman obtains the listing of the property he is entitled to 55% of the 5% commission collected by defendant company Plaintiff claims $376.75 which is 55% of $685.00 collected by defendant as commission. The jury found in favor of plaintiff for this amount. Defendant's principal complaint is that plaintiff did not keep the Fraziers informed of the progress of the building. Koenig in his testimony admitted that whenever plaintiff made a sale in which he was the prime salesman he was entitled to a commission for making the

sale, and if he got the listing and made the sale he would get 55% of the commission, which he said is over and above the 15% he was to get as sales manager. Koenig in his testimony admitted that after the sale was made the salesman never closes the deal. The closing of all deals is made by Koenig or the Secretary of the company. The Hoelzer commission was collected. The only error assigned by the defendant is in the giving of the Instructions on this count. We have examined these instructions and do not find any prejudicial error. The jury was not misled by them as its verdict indicates.

COUNT III. In connection with this count plaintiff testified that he had an agreement with Koenig that he was to receive one-half of the commission received by the company from the sale of insurance. He said he only received one commission on a policy issued to the Assembly of God's Church. The auditor testified that there was received by the defendant company for the period in question from insurance commissions the amount of $744.13, which it seems did not include any of the commissions from the church policy. Plaintiff claims he is due one-half of this sum; namely, $372.07, which was the amount of the jury's verdict. Here again defendant complains about the instructions given in connection with this claim. We have examined the instructions and find no error. Here again Koenig in his testimony did not dispute the existence of such agreement and the amount of the commissions received by the company for the period in question is plainly reflected on the profit and loss statement of the auditor. Defendant contends that the amount of the jury verdict should have been deducted from the net profits in connection with plaintiff's claim under Count I. The answer to this is that the written contract provides that the auditor's statement is conclusive. The commission claimed under this Count was not paid out in 1964 and of course has not as yet been paid.

The judgment is reversed and cause remanded with directions to enter a new judgment in favor of plaintiff as of the date of the original judgment in the amount of $1,491.32, which amount represents a recovery under Count I of $742.50; under Count II of $376.75 and under Count III of $372.07.

ANDERSON, P. J., and JOHN C. CASEY, Special Judge, concur.