**Alice ROSENTHAL, Plaintiff/Appellant,**

v.

**Shelby JORDAN,
Defendant/Respondent.**

**No. 55540.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 23, 1990.

---

Marina Jane Matoesian, St. Louis, for plaintiff/appellant.

Michael Barry Smallwood, St. Louis, for defendant/respondent.

CARL R. GAERTNER, Judge.

Plaintiff appeals from an adverse judgment entered on a jury verdict for defendant in her breach of contract claim. We reverse and remand.

Plaintiff is the widow of Morris Rosenthal, an attorney who died on July 6, 1978. By virtue of Letters of Refusal issued by the Probate Court of the City of St. Louis on September 1, 1978, she became the successor in interest to Mr. Rosenthal's rights to an agent's commission under the contract which is the subject matter of this action. Defendant, Shelby Jordan, is a professional football player. Some years prior to the events in issue, defendant retained Mr. Rosenthal in connection with a contract dispute with the Houston Oilers Football Club. That matter was settled amicably. Defendant played with the New England Patriots Football Club during the 1974–1975 season. For reasons not disclosed in the evidence he did not play in 1976. Defendant testified that he approached the Patriots coach, Chuck Fairbanks, about returning to the team in 1977. Fairbanks offered him four one-year contracts at specified salaries on a "take it or leave it basis." On June 3, 1977, defendant wrote two letters, one to Mr. Rosenthal and one to the Patriots, stating that he wished to have Mr. Rosenthal represent him on future contract negotiations. On June 26, 1977, defendant and Mr. Rosenthal executed the contract at issue in this case. Drafted by Mr. Rosenthal, the contract provides as follows:

> I, the undersigned, Shelby Jordan, hereby employ Morris M. Rosenthal, as Attorney to represent me in negotiations and agreements for a Contract and/or multiple year contracts for my services as a professional football player with the *New England Patriots Football Club, Inc.*, and/or any National Football League teams to whom I may be, or may become eligible to offer my services and enter into contracts with, under the NFL collective bargaining agreement and in accordance with the Constitution, By-Laws, Rules, and Regulations of the League and of the Club, as provided for and contained in the Player Contract for the National Football League.

> In consideration of services rendered and to be rendered to me as my representative in connection with agreements and negotiations for contracts, as herein above mentioned, I hereby agree to pay to Morris M. Rosenthal, as compensation

for any and all contracts negotiated by him, as follows: Ten percent (10%) of the total amount of the base compensation paid to me by the Club each football season during the term of any contract and Ten percent (10%) of the total amount of any and all bonus agreements earned, due and paid to me by the Club during the term of any contract.

Payment of compensation to Morris M. Rosenthal will be made as follows: Payment of the base contract compensation shall be paid by me in weekly installments, commencing with the first and ending with the last regularly scheduled league game played by the Club under such season. Payment of the compensation for any and all bonus amounts earned shall be due and payable by me immediately upon receipt of same. As additional compensation for his services, I agree to pay to Morris M. Rosenthal, Ten percent (10%) of the total amount of each proportionate share paid to me as a member of a Club that participates in any conference play-off games, championship games or super bowl game during the term of any contract, including Pro Bowl as designated in Article XXIX, § 1.

On July 7, 1977, defendant signed four one-year NFL Standard Player Contracts with the Patriots. Under each contract defendant was employed as a "skilled football player" from April 1 of the first year to April 1 of the next year. The contracts were not "guaranteed" but were terminable at will by the football club. Defendant was to receive an annual salary payable in equal weekly installments over the regular season. If at anytime for any reason, other than injury, he was cut from the team or discharged, no further compensation would be paid.

Defendant played football pursuant to the 1977–1978 contract which provided for an annual salary of $36,000. Pursuant to

defendant's authorization ten percent of this amount was paid directly to Mr. Rosenthal by the Patriots in weekly installments during the regular football season. Defendant also played during the 1978 season pursuant to the 1978–1979 contract which provided for a salary of $42,000. No payment of any agent's commission was paid during that year as Mr. Rosenthal had died on July 6, 1978. The 1979–1980 contract, which called for a salary of $48,000, and the 1980–1981 contract with a salary of $54,000, were both superseded by contracts negotiated in 1979 by defendant and his wife without representation. These new contracts provided for salaries of $65,000 and $75,000 respectively.

On April 1, 1980, plaintiff filed this action alleging that three player contracts signed by defendant on July 7, 1977, for the 1977–1978, 1978–1979, and 1979–1980 seasons had been negotiated by Mr. Rosenthal and that he had thereby fully performed his obligations under the agency contract before his death. The petition further alleged that defendant had refused to make or authorize any payment since the death of Mr. Rosenthal and prayed for damages in the sum of $17,500.[1] Defendant answered by general denial and the allegation of ten affirmative defenses. Prior to trial, the court below sustained plaintiff's motion to strike certain affirmative defenses, including the allegation that Mr. Rosenthal failed to perform his obligation under the agency contract.

■ On appeal plaintiff argues that it was error for the trial court to permit the introduction of evidence regarding Mr. Rosenthal's failure to perform the contract, to refuse her proffered instruction predicated upon MAI 26.02, submitting as the sole issue for jury determination defendant's breach of the contract and the giving of an instruction MAI 26.06, submitting the dual issues of Mr. Rosenthal's performance and

---

1. We find no explanation in the record of plaintiff's calculation of damages. The petition, which was never amended, refers to three player contracts under which the 10 percent commissions would total $12,600. Plaintiff does not dispute that $3,600 was paid to her husband under the first contract. The fourth player contract, which would have provided an additional $5,400 commission, was not mentioned in the petition nor in the probate order of refusal of letters. This contract was admitted in evidence over defendant's objection that it was neither pleaded nor transfered to plaintiff by the probate court order.

defendant's breach. In effect, plaintiff's argument is that the pre-trial order striking the affirmative defense allegations constituted a final determination of any issue regarding Mr. Rosenthal's performance of his contractual obligation and relieved her of any burden of proof with regard thereto. We disagree. Pleading and proof of performance or tender of performance is essential to recovery on an express contract. *Miran Investment Co. v. Medical West Building Corp.*, 414 S.W.2d 297, 302 (Mo. 1967). Thus, failure of performance is not an affirmative defense which contemplates additional facts not included in allegations necessary to support a plaintiff's case and which, if proven, allow a defendant to avoid legal responsibility, even though plaintiff's allegations are also established by the evidence. *Parker v. Pine*, 617 S.W.2d 536, 542 (Mo.App.1981). Defendant's denial of plaintiff's allegation that Mr. Rosenthal fully performed his obligations under the agency contract controverts an issue essential to plaintiff's right of recovery. The fact that the affirmative defense allegations of failure of performance were stricken is of no consequence.

Plaintiff offered into evidence, as admissions, defendant's deposition testimony that Mr. Rosenthal negotiated the player contracts on his behalf and as his representative pursuant to the agency contract. Defendant's trial testimony, somewhat corroborated by the testimony of Chuck Fairbanks, was that no negotiations took place. Rather, the transaction was merely the acceptance of the earlier "take it or leave it" offer made to defendant before the agency contract was executed. This dispute supports the trial court's instruction, MAI 26.-06, requiring the jury to find that Mr. Rosenthal performed his obligations and defendant failed to do so as a predicate to a verdict in favor of plaintiff.

Thus, a crucial issue is what Mr. Rosenthal was required to do in order to satisfy his contractual obligations. On this point plaintiff introduced evidence showing Mr. Rosenthal represented defendant in the negotiations leading to the four player contracts signed on July 7, 1977. She maintains this fulfilled all he agreed to do to be entitled to receive ten percent of the compensation paid to defendant pursuant to these contracts. Defendant not only disputed Mr. Rosenthal's involvement in securing the four contracts, but also insists Mr. Rosenthal was obligated to continue to represent him throughout the term of the four contracts. Over plaintiff's strenuous and repeated objections defendant was permitted to testify that he expected Mr. Rosenthal to be his lawyer for four years, not only to represent him in negotiations for football contracts but also in negotiating endorsement agreements, assisting in financial and tax planning, and advising on investments. Plaintiff unsuccessfully sought to exclude the testimony of defendant's "expert witness", Larron Jackson, a former professional football player whose qualifications as an expert were based upon his serving as a player representative for the NFL Player's Association during the player's strike in 1974 and in assisting his teammates in resolving contract problems and grievances with management. He was allowed to testify that the relationship between professional football players and their agents or attorneys was "ongoing" and that they "performed duties or have discussions with you or become involved with the NFL for reasons other than negotiating contracts."

The language of the agency contract signed by Mr. Rosenthal and defendant on June 26, 1977, imposes upon Mr. Rosenthal no duty to perform anything beyond representing defendant in negotiating contracts for his services as a professional football player with the New England Patriots or any other National Football League team. The conclusion is inescapable that the introduction of the evidence regarding defendant's subjective expectations and Jacksons' opinion regarding the relationship between agents and other professional football players was an impermissible effort to vary the terms of a written contract by parol evidence.

In overruling plaintiff's objections to this testimony regarding defendant's subjective intent and the relationship of other players and agents, the trial court repeatedly ex-

pressed the view that the primary issue was the intention of the parties and that whether the contract was "ambiguous or not, I think the parol evidence can come in as to the intention of the parties." On the contrary, the well-established principles are set forth in *Edgewater Health Care, Inc. v. Health Systems Management, Inc.*, 752 S.W.2d 860, 865 (Mo.App.1988):

> The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone, and it becomes the duty of the court and not the jury to state its clear meaning. *Kalen v. Steele*, 341 S.W.2d 343, 346[1, 2] (Mo.App.1960). Of course, whether the terms of an agreement are ambiguous is a question of law. If it is determined that an ambiguity exists, it is then for the trier of fact to resolve the ambiguity. *Mal Spinrad of St. Louis, Inc. v. Karman, Inc.*, 690 S.W.2d 460, 464[7] (Mo. App.1985).

> An ambiguity is said to exist in a written instrument 'only when it is reasonably susceptible of different constructions' *Kalen*, 341 S.W.2d at 346–47[4]. In determining whether vel non an ambiguity exists, the whole instrument must be considered.

Defendant attempts to justify the admission of the parol evidence by arguing the trial court ruled that the contract contained "some ambiguousities," even though the court found it unnecessary to expand on that "because of [its] view that the intention of the parties is relevant." Apparently in an effort to clarify this statement by the trial court, defendant points to his own testimony that he considered the language of the second paragraph of the agency contract, that Mr. Rosenthal was to be compensated for "services rendered and to be rendered to me as my representative in connection with agreements and negotiations for contracts," to include negotiations for contracts involving product endorsements. This argument overlooks the modifying phrase in the second paragraph which limits the contracts to those "herein

above mentioned", i.e. to contracts with the New England Patriots and other NFL teams. Moreover, even if we were to accept defendant's argument, it would not justify the admission of evidence regarding contractual obligations imposed upon Mr. Rosenthal to render services as a financial planner, an investment advisor and a tax consultant. The language of the contract is not reasonably susceptible to an interpretation imposing any duty upon Mr. Rosenthal beyond representation of defendant in the negotiation of player contracts with NFL football teams.

Since defendant's evidence created a disputed issue regarding whether or not Mr. Rosenthal had furnished such representation in connection with the four player contracts, the jury was properly instructed to determine the issue of his performance. However, under the evidence admitted the decision of the jury could well have been based upon Mr. Rosenthal's failure to render services relating to endorsements, taxes, investments or financial planning. The admission of the evidence of defendant's subjective expectations and of the relationship of other players and their agents was prejudicially erroneous.

Because of this error we are required to reverse the judgment and remand the case for a new trial. On retrial it should be noted that plaintiff's contention that the services to be rendered by Mr. Rosenthal were completed upon the execution of the four player contracts in July, 1977, thus entitling him to ten percent of the amount of each contract, is not supported by the evidence or by the language of the agency contract. He was entitled to ten percent of the compensation paid to defendant "during the term of any contract" which he negotiated as defendant's representative. Although there is evidence from which a jury might find Mr. Rosenthal rendered services in connection with the four one-year contracts, there is no evidence the defendant was paid compensation pursuant to such contracts, except for the 1977–78 season, for which Mr. Rosenthal was paid his ten percent, and for the 1978–79 season, for which he was not. The original con-

tracts for the years 1979–80 and 1980–81 were superseded by later contracts negotiated solely by defendant and his wife. Nothing in the agency contract furnishes Mr. Rosenthal any entitlement to a commission on compensation paid to defendant under contracts which Mr. Rosenthal did not negotiate.

Accordingly, the judgment is reversed and the cause is remanded for a new trial.

HAMILTON, P.J., and STEPHAN, Jr., concur.