T. S. NEELY, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COMPANY, A CORPORATION, APPELLANT.—252 S. W. 2d 88.

Kansas City Court of Appeals.   Opinion delivered October 6, 1952.

*Charles L. Carr, F. L. Thompson,* and *Sam Mandell,* for appellant. *Popham, Thompson, Popham, Mandell & Trusty,* of Counsel.

*William C. Reynolds, Sprinkle, Knowles & Carter*, for respondent.

DEW, J.—Respondent, as plaintiff in the trial court, sought to recover damages to his parked automobile which, it was alleged, was run into and damaged by a passenger bus owned and operated by defendant. There was a verdict for the plaintiff for $1500, and judgment accordingly. Defendant has appealed.

The petition charged negligence in failing to keep the bus under control, failure to keep a lookout for cars approaching the intersection in question, failure to stop the bus, and violations of certain speed ordinances of Kansas City. The answer was in the nature of a general denial.

Plaintiff lived in a house facing on Brooklyn Avenue at the northeast corner of the intersection of that street and 33rd Street, a residential section of Kansas City. Brooklyn is 37 feet wide and runs north and south, and 33rd Street is about 27 feet wide and runs east and west. The immediate approach on 33rd Street toward Brooklyn from the west in considerably downgrade. About midnight on September 1, 1948, plaintiff's 1939 Cadillac was parked adjacent to the curb in front of the plaintiff's residence, facing north and was about 33 feet north of 33rd Street. Plaintiff did not see the accident to his car but heard the noise, saw the crowd gathering and went out to investigate. There he found his car pushed 100 feet to the north where it was rammed into a car ahead, which in turn had been pushed into another car ahead, which itself had been shoved into a telephone pole. Defendant's bus had partially telescoped the rear of plaintiff's car. Across the street near the corner and resting diagonally over the sidewalk and parking was a 1935 Cadillac car which had also been involved in the accident, and which was also badly damaged by the collision.

According to the evidence the defendant's bus, just prior to the collision, was north-bound on Brooklyn, approaching 33rd Street from the south and at the same time the 1935 Cadillac car, containing four young men aged from 16 to 19, respectively, was approaching Brooklyn Avenue from the west on 33rd Street. The driver and owner of the 1935 Cadillac was Kenneth Messick, aged 19, who is not a party to this action and who, at the time of the trial, was shown to be in the state of Washington. The bus and the Messick car collided with great force near the central portion of the intersection. The front right wheel and fender of the Messick car and the front left side of the bus came together with such impact as to hurl the operator of the bus from his seat to the floor, causing him to lose control of the bus, which veered to the right and into the rear of the plaintiff's parked car. The Messick car was turned and shoved over the walk and parking on the west side of Brooklyn, just south of the intersection. City ordinances in question were introduced.

There was extremely divergent testimony as to the speed of the bus and the speed of the Messick car; as to which first reached the intersection; and as to the relative location of the two approaching vehicles just prior to reaching the intersection. Defendant sought to prove by the bus driver that immediately after the accident in a conversation in which he participated with Kenneth Messick, a police officer and the plaintiff, Messick stated that he had approached the intersection at 40 to 50 miles an hour, and that his brakes were not operating. On objection this evidence was excluded. Also a police officer at the scene testified that he found the brakes on Messick's car defective, and upon objection by the plaintiff, was not allowed to testify that Messick stated to the officer that he (Messick) approached the intersection at about 50 miles an hour, and that his brakes were defective.

Defendant's first contention is that the court erred in refusing to admit testimony of Messick's statements as to his own excessive speed and defective brakes. It is urged that such statements were declarations against interest, constituting competent and relevant evidence, and were admissible because Messick was out of the state and not available as a witness. Defendant argues that Messick saw the damage done, knew that his high speed in approaching the intersection and with defective brakes was gross negligence on his part, contributing to, if not the sole cause of the collision; knew that he had violated the law as to speed and brakes, and must have realized that his negligence solely caused the damages so brought about. Under such conditions, the defendant contends, the said declarations of Kenneth Messick were admissible.

The plaintiff's position is that Messick was not a party to this action nor a witness at the trial; that Messick's car never came in contact with the plaintiff's car; that he had no pecuniary, proprietary or penal interest in the matter to form a basis for a declaration against interest or a proper exception to the hearsay rule; that a mere possibility of a civil action against him was not sufficient reason for a declaration against interest; that, furthermore, there was already direct evidence in the case as to Messick's speed and defective brakes, rendering his alleged declarations cumulative at best, and that even if otherwise proper, they became subject to admission or exclusion in the sole discretion of the trial judge. Plaintiff argues also that if defendant was negligent and such negligence contributed to cause the collision, then Messick's negligence would be no defense. Plaintiff does not challenge the unavailability of the witness Messick, as to which there was the mere proof that he was in the State of Washington at the time of the trial.

There is a vital distinction between *admissions* against interest and *declarations* against interest. Admissions against interest are those made by a party to the litigation or by one in privity with or identified in legal interest with such party, and admissible whether or not the declarant is available as a witness. Declarations against interest are those made by persons not a party or in privity with a party to the suit, are secondary evidence and constitute an exception to the hearsay rule, admissible only when the declarant is unavailable as a witness. The rule has developed to include declarants other than deceased persons to whom only it was originally applied, and now includes declarants unavailable for other reasons, such as insanity, exemptions under constitutional privileges and absence from the jurisdiction. 31 C.J.S. p. 958, Sec. 217; Jones on Evidence, Civil Cases, 4th Ed. Vol. 1, Secs. 323 to 330. To be admissible such a declaration must spring from the peculiar means of knowledge of the matter stated, must be against the interest of the declarant at the time made, and such interest must be so apparent as to have been presumably in the declarant's

mind when made. McComb v. Vaughn, 358 Mo. 951, 955, 218 S.W. 2d 548, 551. Tennison v. St. Louis-San Francisco Ry. Co., 228 S.W. 2d 718. The basis of such exception to the hearsay rule is stated in the late case of Osborne v. Purdome, 250 S.W. 2d (Mo.) 159, 163, as follows: "The theory of admissibility of declarations against interest is that they are trustworthy because the declarant would not concede, even to himself, the existence of a matter contrary to his interest unless he believed it to be true. (See 5 Wigmore on Evidence, 262, Sec. 1457; American Law Institute Model Code of Evidence, Rule 509, comment c.). We do not think it is necessarily a question of how much it is against the declarant's interest if the matter declared has the quality of being directly and immediately against the declarant's interest that should be sufficient." See, also, Wigmore on Evidence, 3rd Ed. Sec. 1457; 162 A.L.R. 446.

In the McComb case, supra, an operator of a motorcycle was killed after dark in a collision with a truck driven by the defendant. Defendant offered a witness to prove that earlier in the evening when the deceased stopped at Cardwell, Missouri, en route to his final destination, he admitted that he had driven from Gideon to Cardwell without lights on his motorcycle, and that the lights of approaching motor cars blinded him. Later, after reaching the final destination of his trip and having there eaten supper with his sister, deceased and his sister as a passenger on the rear seat, rode on the motorcycle on a proposed errand to a nearby oil station, and on this latter trip the collision occurred and deceased was killed. The court defined the distinction between an admission against interest made by a party to a suit or one in privity with such party, and a declaration of a third person against his own proprietary, pecuniary or penal interest, and said of the latter at page 955: "It is competent in any action in which it is relevant, even though the declarant is not a party or in privity with a party to the action. But the statement of declarant, in order to be admissible as a declaration against interest, must have been adverse to an interest possessed by declarant at the time the statement was made, and the interest must be so apparent as to have presumably been in the mind of declarant at the time the statement was made." The Court, however, held that the alleged declaration made at Cardwell was inadmissible because at that time the declarant had yet no pecuniary or proprietary interest in any claim for his injuries, even though his statement would tend to prove that he had not complied with statutory requirements as to lights *prior* to his stop at Cardwell en route to his sister's home, and might have subjected him to prosecution under the statute for that violation. The court further held his declaration made at Cardwell was too remote to apply after the break in the continuity of his travels by the stop at his destination and eating his supper and starting on his later errand with his passenger, and that his statement raised only a collateral issue.

Sutter v. Easterly, 354 Mo. 282, 189 S.W. 2d 284, was a suit in equity to set aside a judgment at law on the ground it was procured through fraud. An "eyewitness" in the former suit, in conspiracy with an attorney for the plaintiff therein, had falsely testified in that action that he had seen the accident in question and that the defendant was on the wrong side of the road. The witness was in fact 50 miles from the scene of the accident at the time of its occurrence. The trial in the damage suit resulted in a judgment for plaintiff for $25,000. The witness later, by his affidavit, confessed his perjury and conspiracy in detail. In the equity suit, this witness refused to testify on the ground he might incriminate himself. His affidavit of confession was then introduced. On appeal it was argued that it was error to admit it in evidence. The Supreme Court said (p. 294): "We hold the affidavit is admissible as a declaration against interest by a third person not available as a witness. This is a well recognized exception to the hearsay rule but there is considerable difference of opinion as to the scope of the exception". The court proceeded to rule that declarations against penal interest, as well as those against proprietary or pecuniary interest, come within the exception, and that the affidavit in evidence subjected the witness to indictment and imprisonment and was admissible. It ruled further that unavailable witnesses include those made so by death, illness, insanity and absence from the jurisdiction, as well as those exempted under the Constitution.

In Moore v. Metropolitan Life Ins. Co., 237 S.W. 2d 210 (Mo.App.), a suit on an insurance policy for accidental death, the declarations of a woman not a party to the suit, who admitted killing the insured but in self-defense, and who declined to testify on the ground that the testimony might tend to incriminate her, were held inadmissible on the general issue solely because her alleged statements were actually not against her interest but in fact in her own favor and were self-serving. The statements were admitted, however, on the specific issue only of vexatious refusal of the insurance company to pay the claim.

The principle that declarations of an unavailable third party, when relevant to the issues at hand, and when, at the time made, were against the interests of such declarant, is now generally recognized in most jurisdictions as an exception to the hearsay rule. "It is today everywhere fully accepted." Wigmore, supra, Sec. 1455. In Weber v. Chicago, R. I. & P. R. Co., 175 Ia. 358, 151 N.W. 852, L.R.A. 1918, 626, the plaintiff sued for injuries sustained in a wreck of defendant's train. Defendant sought to prove that the sole cause of the wreck was the criminal conduct of one Von Kutzlaben, a stranger to the suit, in disconnecting a rail, and who since had been convicted of murder, in causing the death of one of the passengers on the same train by the same wreck and had been committed to the asylum for the criminally insane. The defendant offered in that case oral and written statements of Von Kutzlaben in which he described in detail his plan to wreck the

train and the manner in which he did it. The offer was refused by the trial court. The Supreme Court of Iowa found that all the grounds existed for the admissibility of the declarations of Von Kutzlaben as an exception to the hearsay rule and held (175 Ia. 395) : ''The declarations were made against his pecuniary interest for they were of such a nature as to constitute the basis of an action against him for damages as well as to expose him to criminal prosecution''. See, also, Reed v. Philpot, 235 Ky. 429, 31 S.W. 2d 709; Walker v. Brantner, 59 Kans. 117, 52 P. 80; Halvorsen v. Moon & Kerr Lbr. Co., 87 Minn. 18, 91 N.W. 28; 1 Greenleaf on Evidence, 15 Ed. Sec. 147; 20 Am. Jur. Evidence, Sec. 556.

Assuming, as stated, Kenneth Messick was unavailable as a witness at the time of trial, since defendant does not challenge the sufficiency of proof on that issue, there was substantial evidence which tended to prove that Messick approached the intersection at night time in an old car on a downgrade at the rate of 40 to 50 miles an hour when his brakes were not operating, and that he entered the intersection under those conditions after the bus had entered the same, causing and permitting his car to run into and against the front left side of the bus which was thereby caused to run into the plaintiff's parked car; that he had peculiar knowledge of the above facts and that after the collision he was an eyewitness to the damage directly growing out of the collision. Nothing of record tends to show any motive on his part to falsify and assume liability for the collision. It must be presumed under such conditions that Messick then and there realized his interest in any claim by him or against him growing out of the disastrous effects of the collision. He certainly had at the time of his alleged declaration a proprietary and pecuniary interest involved, if not also a penal interest. Plainly his alleged declarations were contrary to his interest in such respects.

But the plaintiff further asserts that direct evidence was admitted as to the subject matter of the excluded declarations of Messick, and that it was properly within the court's discretion to exclude the purely cumulative evidence which the declarations contained. The direct evidence as to the defective brakes on Messick's car pertained to their condition upon inspection by others after the collision, and defendant was entitled to show, if possible, the condition of Messick's brakes immediately before the collision, and by the statement of one who was best and peculiarly qualified to know that fact, to-wit, the owner and operator of the car. There was no evidence that the defects that prevented the brakes from ''operating'' before the collision were the defects that were noted by the witnesses after the wreck. As to the direct evidence of Messick's speed, that proof consisted of either the estimates of by-standers or of the bus driver who was adversely interested. Defendant was entitled to prove, if possible, by the statements of Messick himself that he approached the intersection under the conditions

in evidence at 40 to 50 miles an hour and that the sole cause of the collision was Messick's negligence. It is true that it is in the sound discretion of the trial court to exclude purely cumulative evidence. State v. Harris, 334 Mo. 38, 64 S.W. 2d 256. It cannot be said that the excluded declarations of Messick constituted merely cumulative evidence. In 32 C. J. S. p. 1039, Sec. 1016, it is said: "Cumulative evidence is additional evidence of the same kind tending to prove the same point as other evidence already given. Evidence of a different kind or of other and different circumstances tending to establish or disprove the same fact is not cumulative." We believe and so hold, that the court erred in excluding evidence of Messick's declarations described.

Defendant next assigns error in giving plaintiff's Instruction A. That instruction reads as follows:

"The court instructs the jury that if you find and believe from the evidence that there was in full force and effect Ordinances of Kansas City, Missouri, which among other things provide that a street car or vehicle should not be operated at a greater speed than was reasonable and prudent having due regard to the traffic, surface and width of the street and the hazard at an intersection and that said Ordinances also provide that street cars should not be operated in residence or business districts in excess of 25 miles an hour during the nighttime, if you so find, and if you further find and believe from the evidence that on the evening of September 1st, 1948, that defendant's motor bus was being operated north on Brooklyn Avenue, if you so find, and if you further find and believe from the evidence that plaintiff's automobile was parked in front of his home headed north on the east side of Brooklyn Avenue and north of 33rd Street, if you so find, and if you further find and believe from the evidence that said motor bus was operated into said intersection at a greater rate of speed than was reasonable and prudent having due regard to the traffic, surface and width of the street and the hazards of the intersection, if you so find, and if you further find and believe from the evidence that defendant's street car bus was operated into and across the intersection of 33rd Street and Brooklyn Avenue at a greater rate of speed than 25 miles per hour, if you so find, and that there was a collision between said motor bus and an eastbound automobile on 33rd Street, if you so find, and that after said collision the said motor bus struck plaintiff's automobile and damaged same, if you so find, and if you further find and believe from the evidence that it was negligence for defendant's bus to be operated in the manner aforesaid, if you so find, and that as a direct result thereof the collision occurred and plaintiff's automobile was damaged, if you so find, then you are instructed that your verdict shall be in favor of the plaintiff and against the defendant.' '

1252

Defendant criticizes this instruction on the ground that no factual hypothesis was submitted to guide the jury in determining the issue of excessive speed and cites Yates v. Manchester, 358 Mo. 894, 217 S.W. 2d 541, together with Green v. Guynes (Mo.) 235 S. W. 2d 298, and Fantin v. Hays (Mo.) 242 S.W. 2d 509, which follow the Yates case. It is complained that the instruction assumes that a hazard existed at the intersection; that it destroys the sole cause defense since it gives the jury a roving commission to find negligence without regard to the position or speed of the Messick car when the bus neared and entered the intersection; that it required no finding of violation of the ordinances or consequent negligence, nor that such speed or negligence was the proximate cause of the collision. It is urged that the words "in the manner aforesaid" are confusing and unexplained.

Instruction "A" purports to cover the whole case and authorizes a judgment for the plaintiff thereunder. Whether or not the motor bus was operated in the intersection at a greater speed than was reasonable considering the traffic, hazards and physical conditions there, depends upon the finding of other essential and particular facts in evidence and in dispute, not required by the instruction, such as the speed of the approaching Messick car and its location in respect to the intersection. The instruction leaves such hypothesis to the speculation of the jury. In Yates v. Manchester, supra, the instruction submitted to the jury the issue whether the defendant "failed and neglected to slow down for the intersection * * * and in so failing was negligent * * * and that as a result of such negligence his automobile collided with the cab * * *." The court held such submission of negligence without further facts and circumstances submitted, was too broad, indefinite and uncertain and "it submitted no facts to aid the jury in determining the issue of negligence. No facts sufficient to raise a duty to slow down for the intersection were required to be found by the jury". In the instant case, merely submitting the location of the plaintiff's parked car and the defendant's bus and the later collision of the bus and the Messick car, was insufficient as a factual basis to submission of negligence in the entering and crossing of the intersection by the bus at a greater speed than reasonable and prudent with due regard to the traffic, hazards and physical conditions. It was said in Annin v. Jackson, 340 Mo. 331, 100 S. W. 2d 872, 875: "It is the accepted rule of decision, even in those cases where general averments are made and the doctrine of res ipsa loquitur does not apply, that when it comes to submit the question of liability to the jury thereunder the instructions must reckon with the facts and require a finding upon the particular negligent acts revealed in the evidence, and, unless they do so, the judgment should be reversed therefor". We do not believe the words "in the manner aforesaid" remedied the omission of a factual hypothesis in the submission of the first assignment of negligence in

Instruction "A", and we find appellant's first complaint of that instruction well taken.

However, there was conjunctively submitted with the above assignment of negligence, the further assignment of a violation of an ordinance prohibiting operation of a street car or bus in the residence district of the city at a speed in excess of 25 miles an hour. If that charge of negligence was properly submitted then the error in the submission of the first and general assignment of negligent speed, conjunctively joined, became harmless. Bowman v. Standard Oil Co. of Indiana, 350 Mo. 958, 964, 169 S.W. 2d 384. We turn our attention, therefore, to the submission of violation of the 25 mile ordinance and consider whether that was improperly submitted for lack of factual hypothesis. That charge was on its face specific in nature. There was substantial evidence from which the jury might well determine that the bus at the time of the collision, was traveling at a speed in excess of 25 miles an hour, which, if true, was a violation of the ordinance, and negligence *per se.* Sluder v. Transit Co., 189 Mo. 107, 135, 88 S.W. 648; Jackson v. K.C.T.S. & M. Ry. Co., 157 Mo. 621, 58 S.W. 32; Prewitt v. M.K. & T. Ry. Co., 134 Mo. 615, 624, 36 S.W. 667; Stotler v. Chicago & Alton Ry. et al, 200 Mo. 107, 121, 98 S.W. 509; 65 C.J. S. Sec. 19, pp. 416-422; Sec. 243, p. 1088. Hence the jury was given no roving commission to speculate on what speed did violate the second ordinance referred to nor whether its violation constituted negligence. Furthermore, the instruction was so drawn as to require the jury to find whether the excess, if any, over such maximum speed was negligence. All the essential facts were hypothesized to submit negligence on the second assignment. LeGrand v. U-Drive-It Co., 247 S.W. 2d 706, (Mo.).

But the defendant extends its argument further and contends that the instruction also lacked a factual hypothesis to submit the element of causation. The instruction reads: "And if you further find and believe from the evidence that it was negligence for defendant's bus to be operated in the manner aforesaid, if you so find, and that as a direct result thereof the collision occurred and plaintiff's automobile was damaged * * *". It will be noted that in Yates v. Manchester, supra, and in other cases following it, the element involved was negligence, and in none of them was the theory of the Yates case applied to the ultimate fact of causation. In fact, in those cases the words submitting the issue of causation were similar to those in the instruction here at hand and were not challenged. In the case of Knight v. Richey, (Mo.) No. 42790, not yet reported, the court having found the issue of negligence had been sufficiently submitted, held that the submission of the issue of causation and injury in words similar to those before us, was sufficient.

In the case at bar it is our opinion that the reasonable inferences from the facts submitted were sufficient to submit the element of proximate cause in the words used in Instruction "A". Nor do we

believe that the instruction assumed defendant's negligence nor that the words "in the manner aforesaid" were misleading or confusing. We find no reversible error in plaintiff's Instruction "A".

Defendant next complains of plaintiff's Instruction "B", which follows:

"The court instructs the jury that if you find and believe from the evidence that the collision between the northbound motor bus and the automobile at 33rd and Brooklyn Avenue was due to the combined negligence of the defendant, as outlined in other instructions, and the driver of the eastbound automobile, and if you further find and believe from the evidence that thereafter the operator of the motor bus lost control of the same then your verdict shall be in favor of the plaintiff if you find the defendant negligent as outlined in other instructions herein."

It is urged that the instruction assumed defendant's negligence and was confusing. We think the restrictions as to defendant's negligence as outlined in other instructions were clear and that the instruction did not assume defendant's negligence or confuse the meaning sought to be conveyed to the jury.

Defendant's next point is that the plaintiff's instruction "C" is erroneous. It follows:

"The court instructs the jury that if you find the issues in favor of the plaintiff and against the defendant that in estimating plaintiff's damage, if any, you may take into consideration the reasonable market value of plaintiff's automobile immediately before it was damaged and the reasonable market value of the same immediately after it was damaged."

Defendant points out that the instruction does not restrict the jury solely to the evidence in arriving at the damages to the car, nor exclusively to the difference between the reasonable market value immediately before and after the collision occurred, as the sole measure of damages. We believe the instruction should have restricted the jury on the assessment of damages, to the facts found and believed by it from the evidence. It merely authorized it to consider, "in estimating plaintiff's damage, if any", the reasonable market value before and after the collision and did not confine the jury to such measure of damages. The jury should have been confined to established rules of law for such calculation in suits for damages to personal property. It was said in Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 533, 66 S.W. 2d 903, 910: "As to personal property damage, however, there is a definite rule for calculation, to-wit: The difference between the reasonable market value before and after the injury; and the jury should be so informed. * * * Defendants' contention that the proper rule for determining damages to personal property should be given to the jury is correct". Had Instruction "C" in the case at bar been merely too general or misleading, but yet stated the law as far as it

went, we would be inclined to rule that the defendant was in no position to complain, having requested no instruction to meet its objections. We believe the instruction failed to state the proper rule of the law and was therefore error.

For the reasons hereinbefore set out, the judgment is reversed and the cause remanded. All concur.