James TETER and Carolyn Teter,
Plaintiffs-Appellants,

v.

John F. MORRIS, Defendant-Respondent,

v.

TRANSPORT INDEMNITY COMPANY,
Third Party Plaintiff-Respondent,

v.

The TRAVELERS INDEMNITY
COMPANY, Third Party
Defendant-Respondent.

No. WD 32915.

Missouri Court of Appeals,
Western District.

Dec. 14, 1982.

As Modified March 29, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
April 20, 1983.

Application to Transfer Denied
May 31, 1983.

James H. McLarney and Robert R. Kiene of Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, for plaintiffs-appellants.

Neal E. Millert & Robert M. Sommers of James, Millert, Houdek, Tyrl & Sommers, Kansas City, for third party plaintiff-respondent Travelers Indemnity Co.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

MANFORD, Presiding Judge.

This appeal challenges the entry of a summary judgment. The judgment is affirmed.

Two points charge the trial court with error in granting summary judgment because (1) an indemnity release created a present obligation and (2) there existed a genuine issue of fact.

The source of this litigation was a serious vehicular accident which occurred on January 14, 1968. The accident involved a semi-truck operated by John Morris. Morris was, at the time, accompanied by a co-driver, his nephew and appellant, James Teter. The semi-truck overturned on I–80 in the state of Iowa and both Morris and Teter were injured. Teter's injuries resulted in complete paralysis below the neck. The semi-truck was owned by Edward Philp, a resident of Iowa, who is in the freight transportation business under contract to both private and common carriers. At the time of this accident, the semi-truck was

under lease from Philp to Indiana Refrigerator Lines, Inc. The trip lease was for the purpose of transporting beef from Sioux City, Iowa to Bangor, Maine. Morris was the employee-driver of Philp, and his compensation was to be a percentage of the gross rental received by Philp. Teter was to be paid by Morris from monies received from Philp. The lease agreement designated drivers and driver helpers as employees of the contractor (Philp) and not the carrier (Indiana).

Subsequent to the accident, both Morris and Teter filed workmen compensation claims in Iowa against Philp and Indiana. Philp had workmen's compensation insurance coverage with the Travelers Indemnity Company (respondent) and Indiana was insured by the Transport Indemnity Company. Under procedures in Iowa, Philp and respondent (Travelers) filed an arbitration proceeding before the Iowa Industrial Commission. The purpose of the arbitration proceeding was to determine which party was responsible for workmen's compensation benefits and whether the employer was responsible for benefits to Morris and Teter. Named as parties were Teter, Morris, Indiana and Transport Indemnity. The insurance carrier liability would be determined from an evaluation of employer responsibility.

During the pendency of the arbitration proceedings, Philp and Travelers, represented by an attorney (Smith), compromised the arbitration action with Indiana and Transport Indemnity, who were represented by an attorney (Langdon). Philp and respondent received $250.00 from Indiana and Transport Indemnity in exchange for the agreement by Philp and Travelers that the latter were the responsible employer and carrier. This indemnifying agreement has become the focus of the present appeal. With the execution of the indemnifying agreement, the arbitration proceedings were dismissed. The indemnifying agreement was executed on December 9, 1968.

Teter then filed a common-law action for negligence against Morris in the 16th Judicial Circuit of Missouri in January, 1970.

Transport Indemnity Company was the insurer for Indiana Refrigerator pursuant to an automobile liability policy, effective the date of the accident (January 14, 1968). Morris made demand upon Transport to assume his defense and pay any judgment rendered against him. Transport disclaimed Morris as an insured under its policy and denied it had any duty to defend or pay any judgment rendered against Morris. A non-waiver agreement was entered into between Transport and Morris, and Transport, without waiving its denial of coverage, defended Morris.

Transport then filed an action seeking declaratory judgment to determine that Morris was not an insured under its policy. Morris and Teter were joined in this proceeding. While this declaratory judgment proceeding was pending, Teter and Morris, under date of August 28, 1974, entered into an "Agreement to Limit Recovery to Specified Assets" prior to trial of the common-law action. In this "agreement", Teter and Morris agreed they would attempt to collect only against Philp, Indiana, or any insurer insuring the legal liability of Morris.

On March 10, 1976, the 16th Judicial Circuit Court entered judgment for Morris and against Transport in the declaratory judgment proceedings. An appeal of that judgment was filed. While the appeal was pending, trial on the common-law action (*Teter v. Morris*) was had, resulting in a judgment for Teter and against Morris in the sum of $937,500.00. Judgment was entered February 15, 1978. An appeal of that common-law judgment was filed by Morris but was later dismissed. This judgment remains unsatisfied.

On November 27, 1978, the declaratory judgment in the proceedings between *Transport v. Teter and Morris* was reversed and Transport was found not to be obligated to defend Morris in the common-law action (*Teter v. Morris*), or to pay any judgment. *Transport Indemnity Co. v. Teter*, 575 S.W.2d 780 (Mo.App.1978).

Following the ruling in *Transport,* Morris dismissed his appeal from the common-law action judgment, and on December 1, 1978,

filed this third-party action, naming Travelers (respondent) as defendant and alleging that Travelers was obligated to pay the judgment of the common-law action (*Teter v. Morris*) rendered against him. Teter and Transport then filed third-party claims against Travelers. The parties entered into a stipulation of facts. On February 9, 1981, Travelers (respondent) filed its motion for summary judgment. On June 12, 1981, the trial court entered its memorandum and order sustaining Travelers' motion for summary judgment. This appeal followed.

Under point (1), appellants (hereinafter referred to as Teter) charge that the trial court erred in granting summary judgment in respondent's (hereinafter referred to as Travelers) favor because the indemnity release "created a present obligation." Under this point, Teter offers ten subpoints in support. These points are taken up and disposed of in the sequence presented.

■ Under the first subpoint (A), Teter contends that the terms of the indemnity agreement clearly establish that Travelers intended and assumed the obligation to protect and indemnify firms and persons from liability arising from the accident. He also contends that John Morris is a person within the terms and intent of the indemnity agreement and that it is not necessary to consider extrinsic evidence to determine the legal effect of the indemnity agreement.

The agreement reads as follows:

## "INDEMNIFYING RELEASE

FOR THE SOLE CONSIDERATION OF Two Hundred and Fifty ($250.00) Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby release and forever discharge Indiana Refrigerator Lines, Inc. and Transport Indemnity Company, their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable, hereinafter called releasees, none of whom admit any liability but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of whatsoever kind or nature, and particularly on account of bodily injuries sustained by John Morris and James Teter, claimants, and any workmen's compensation benefits due or claimed to be due them, or arising out of damage or loss, direct or indirect, sustained by them or the undersigned, or claimed to be due from the undersigned in consequence of an accident on or about the 14th day of January, 1968, at or near Interstate Highway No. 80 approximately ¼ miles west of the Oxford interchange in Iowa.

As further consideration for payment of said sum undersigned hereby agree to protect the said releases against any claim for damages, compensation or workmen's compensation or otherwise on the part of said claimants or any other party, growing out of or resulting from injury to said claimants in connection with the above mentioned accident, and to reimburse or make good any loss or damage or costs that the said releases may have to pay if any litigation or claims arise from said injuries; and undersigned hereby waive any and all rights of exemption, both as to real and personal property, to which undersigned may be entitled under the laws of this or any other state as against such claims for reimbursement or indemnity by the said releases.

IN WITNESS WHEREOF, we have hereunto set our hands and seals this 9th day of December, 1968." (signed by representative for Travelers and Philp)

Teter points out that the "thrust" of this third party action is to enforce Travelers' obligation under the above agreement to indemnify Morris for the judgment secured by Teter against Morris. Teter challenges the trial court's action by declaring that the trial court "simply believed that the agreement applied only to Teter and Morris' workmen's compensation claims."

In simple terms, the first part of Teter's bifurcated argument is that neither the record, aside from the stipulation, nor the stipulation between the parties, supports the

trial court's conclusion that "Travelers had no liability coverage for the legal liability of Morris for damages sustained by Teter." The stipulation provides:

"19. No party herein has revealed any evidence that on or before January 14, 1968, that Travelers had issued a policy of liability insurance insuring the legal liability of John Morris for the damages or injuries to the Teters. Each party denies knowledge of the existence of any such evidence."

From the foregoing, Teter attempts to persuade this court from a negative posture and contends that "the court's error is bottomed in the mistaken belief that attorneys Smith and Langdon assumed that Travelers and/or Philp did not have any responsibility or insurance coverage for Morris' negligence. Nothing in the record supports the assumption that Travelers did not insure Philp and his drivers against claims based upon common-law negligence."

In other words, Teter admits to the content and accuracy of the above stipulation, but then attempts to persuade this court that such stipulation prevents the conclusion that liability insurance coverage was not afforded Morris by Travelers. This court has difficulty in following such logic and argument. Teter supports his contention by saying that the indemnity agreement was prepared and negotiated by learned counsel for and on behalf of insurance carriers knowledgeable and astute in the area of liability and releases therefrom. From this, it is argued that these attorneys negotiated and finalized an agreement inclusive of all liability contingencies. Teter concludes from this that within the terms of the agreement, Morris was a person protected within the terms of the agreement.

Initially, there is nothing in the record before this court which suggests the existence of any liability insurance issued by Travelers which would insure the legal liability of Morris. The above-quoted stipulated fact supports the absence of any such insurance coverage. Teter attempts to convince this court by stipulation that there might be such liability insurance coverage

and that this is tantamount to a fact which bars entry of summary judgment. This court cannot agree. This litigation existed some 12 years prior to the court's entry of judgment and the record is silent upon the existence of any such insurance.

The above stipulation could perhaps be interpreted in one of two ways. It could simply be construed as an agreement that there has been no evidence of such insurance revealed, or alternatively, it could be construed that the parties deny the existence of any evidence of such insurance coverage. This court believes the latter construction to be correct. With that construction applied, Teter cannot successfully defend against the motion for summary judgment on mere denial. The pertinent part of Rule 74.04(e) provides that "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue of fact. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Cited in *Clevenger & Wright Co. v. A.O. Smith, Etc.*, 625 S.W.2d 906 (Mo.App.1981). Teter has failed to comply with that portion of Rule 74.04(e) and his point (A)(1) fails.

In the second branch of his point (A), Teter argues that by virtue of the terms of the above indemnifying agreement, Morris became a third party beneficiary to the agreement.

In addition to the mere conclusion that the above agreement expresses an intent by Philp and Travelers to protect Morris, Teter offers little to support his contention under this point. It is Teter's position, contrary to the trial court's finding, that the agreement between Philp and his insurer (Travelers) "appear(s) to release and agree to hold harmless and protect Indiana, its employees, agents and insurer from any claim arising out of the collision." Teter then adds to the foregoing broad general statements addressing the requirements of third party beneficiary agreements. Teter suggests to this court that the agreement, by its very

wording, includes all liability contingencies and intends that Philp and Travelers assume responsibility on behalf of Morris concerning any claim or litigation.

In the first instance, it is evident from the terms of the indemnity agreement that neither Teter nor Morris are named parties or signatories thereto. It then becomes necessary to determine if Morris can benefit from said agreement as a third party beneficiary. At this juncture, all discussion regarding Morris as an alleged indemnitee under the agreement is deferred and discussed infra.

■ Teter neglects to advise this court how Morris is a third party beneficiary and thus entitled to seek enforcement of a claimed right or benefit under the agreement. Nonetheless, this court undertakes to analyze the agreement, with Morris in mind and against approved standards, to determine if Morris is, in fact, a third party beneficiary under the agreement. It has been held that a third party beneficiary is one who, while not privy to a contract or to the consideration therefor, is nonetheless under the law granted a right to make claim for a breach thereof. *Laclede Inv. Corp. v. Kaiser,* 596 S.W.2d 36, 41 (Mo.App. 1980). The rules applicable to the construction of contracts apply generally to indemnity agreements. *Hawkins Construction Co. v. First Federal Savings & Loan,* 416 F.Supp. 388, 395 (S.D.Iowa 1976); However, the rights extended to a third party beneficiary are limited to those beneficiaries "for whose primary benefit the contracting parties intended to make the contract ..." *Laclede* at 41. The third party beneficiary must show that the particular contract was intended by the parties for the direct benefit of the third party beneficiary. *C.R.I. & P. Ry. Co. v. Maryland Casualty Co.,* 75 F.2d 596 (8th Cir.1935). See generally *Laclede Inv. Corp. v. Kaiser, supra.* The intent which must be proven is not that the promisor/promisee to the contract merely had a purpose of granting the third party some benefit, but rather that this intent must be *"an intent that the promisor assume a direct obligation to* (the third party beneficiary)." *Stephens v. Great Southern Savings & Loan Assn.,* 421 S.W.2d 332, 335 (Mo.App.1967) (emphasis added) and *Hardware Center, Inc. v. Parkedge Corp.,* 618 S.W.2d 689, 693 (Mo.App.1981).

■ As argued by Travelers, there are three classifications of third party beneficiaries: donee beneficiary, creditor beneficiary and incidental beneficiary. A donee beneficiary exists if it is shown from the particular facts and circumstances, that the *purpose of the promise obtained* as to all or a part of the performance was to grant the beneficiary a gift or right enforceable against the promisor as to performance which was not originally due the beneficiary. A creditor beneficiary is one who is neither a donee or incidental beneficiary and where performance under the contract by the *promisor* satisfies an obligation or responsibility due the beneficiary by the *promisee.* The final classification, an incidental beneficiary, is neither a donee or creditor beneficiary and is one who only incidentally comes within the contract. An incidental beneficiary is not one to whom an express promise is made or an obligation owed, and thus cannot sue to enforce the contract. *Hardware Center* rules that the "mere desire to confer a benefit on the third party or to advance his interests or promote his welfare is not sufficient." In order for any third party beneficiary to recover, it must be expressly shown that all the parties to the contract intend the beneficiary to have the right to enforce or recover under the contract.

In the instant case, such required intent is not expressed within the indemnity agreement, nor does the supporting evidence (i.e., deposition testimony of counsel who negotiated the agreement)[1] express any intent that Morris was an intended beneficiary under the agreement. Subpoint (A) of point (1) is found to be without merit

---

1. It is to be noted that the agreement is subject to the law of Iowa, which does not prohibit parol evidence where one not a party to the agreement claims a right under the agreement. *Smith v. Conn,* 163 N.W.2d 407, 412 (Iowa 1968).

in its entirety and is ruled against appellant.

Subpoint (B) to point (1) presents nothing more than a conclusion that attorney Smith negotiated the agreement on behalf of Philp and Travelers. Appellant urges the conclusion that if the collision occurred as a result of "defective equipment, improper maintenance, etc.", Philp would be liable, and since Morris was an employee of Philp, the latter would be vicariously liable. This rather abrupt argument suggests that the negotiations and the final draft of the indemnity agreement must have included Morris within the agreement, simply due to his employee status with Philp. Neither the agreement nor the testimony from the drafters of the agreement support any such conclusion. Subpoint (B) is without merit and is ruled against appellant.

Under subpoint (C), Teter charges that "the lessee of the truck and its insurer also were liable for injuries and damages arising from the collision." Teter's contention under this subpoint is nothing more than a mere conclusion, since attorney Langdon negotiated the indemnity agreement on behalf of Indiana and its insurer, and "[s]ince the rig was hauling Indiana's cargo and operating under the authority granted by the I.C.C. Indiana also had substantial exposure to both direct and vicarious liability if the collision was caused by defective equipment or Morris' negligent driving." From this conclusion, Teter advances the safety requirements promulgated by the I.C.C. and the fact that such requirements have been affirmed by the Supreme Court of Missouri. *Brannaker v. Transamerican Freight Lines, Inc.,* 428 S.W.2d 524, 529 (Mo.1968).

The fact that the semi was hauling Indiana's cargo pursuant to a lease fails to support Teter's ultimate conclusion that Morris, as operator of the semi, was intended to be a party to the indemnity agreement. There is nothing within the agreement nor the testimony of the negotiators/drafters to support such a conclusion. Subpoint (C) to point (1) is found to be without merit and is ruled against Teter.

Under subpoint (D), Teter points out that at the time of the execution of the indemnifying agreement, both Indiana and Philp and their insurers were exposed to liability, for both workmen's compensation and common-law negligence of the owner, the lessee and the driver of the semi. From this proposition, Teter contends that both the lease agreement (between Indiana and Philp), plus the deposition testimony of attorney Smith, acknowledge this common law liability. Aside from a mere declaration that Indiana, Philp and their insurers should have followed the "easy solution" in proceeding to arbitration in Iowa (where the record reveals the parties commenced such proceeding, and dismissed it upon execution of the indemnity agreement), Teter really presents no charged error under subpoint (D) to point (1). There is no merit to subpoint (D) and it is ruled against Teter.

Under subpoint (E), Teter contends that the "drafters of the indemnity agreement elected to then and there avoid the uncertainty of litigation of known claims and the risk of other possible claims by fixing the responsibility for such claims."

In this subpoint, Teter argues that the drafting and execution of the indemnity agreement between Philp and Indiana and their insurers was to affix the liability question as to any and all liability claims, and was not limited to claims for workmen's compensation. This court cannot agree. The testimony of the drafters of the agreement does not support Teter's contention. It is apparent from the argument itself that both Morris and Teter are claimants within the terms of the agreement. In addition, as noted above, there was no testimony that the drafters of the agreement contemplated fixing liability beyond that related to the workmen's compensation claims of Teter and Morris. Subpoint (E) to point (1) is found to be without merit and is ruled against Teter.

Under subpoint (F), Teter contends that "it is not necessary to look beyond the agreement and the circumstances surrounding its execution to determine the meaning of the agreement." Teter's contention un-

der this point is that the agreement itself, without reference to extrinsic evidence, establishes that the parties thereto agreed that Travelers accepted responsibility for all forms of liability against Morris, and the same was not limited to workmen's compensation claims. This court cannot agree that the terms of the agreement were so explicit as to bind Travelers beyond claims for workmen's compensation. Subpoint (F) to point (1) is found to be without merit and is ruled against Teter.

Under subpoint (G), Teter contends that "(t)he agreement contains customary language releasing one or more parties and promising to hold them harmless from claims arising out of a specific occurrence." It is hard to discern Teter's argument under this alleged error. He points out that the agreement was comprehensively drafted in customary legal style and concludes that Travelers and Philp agreed to hold harmless Indiana, Transport, their agents or anyone else responsible, from any claim arising out of the collision. The problem with Teter's argument is his failure to show that Morris is within the definition of "releasee" within the agreement. If Teter's claim under this subpoint is that Morris is within that definition because the agreement provides indemnity regarding "anyone else Indiana was responsible for", then his argument is dispelled by the testimony of the drafters of the agreement. In disputes involving the release of unspecified or unnamed persons, parol evidence is admissible to determine the intent of the parties. *State ex rel. Normandy Orthopedics, Inc. v. Crandall*, 581 S.W.2d 829 (Mo. banc 1979). The evidence upon this record shows no such intent at the inception of the agreement. Subpoint (G) to point (1) is found to be without merit and is ruled against Teter.

Under subpoint (H), Teter contends that "(t)he first part of the agreement releases Indiana and its insurer, agents, etc. (including Morris) and all other persons who might be claimed to be liable for damages arising out of the collision." Teter then quotes from portions of the first paragraph of the agreement. It is correct, as Teter complains, that the trial court found Morris could not be included within the definition of "agents and assigns and all other persons, firms or corporations liable or who might be claimed to be liable ..." Teter claims that this finding was erroneous because (1) at the time of the accident Morris was the operator of the semi leased to Indiana, (2) the I.C.C. law imposed upon Indiana full responsibility for the direction, control and operation of the vehicle while operated by Morris, (3) under an ordinary auto liability policy, Morris would be an insured under the omnibus clause and (4) he was a person liable or might have claimed to be liable to Teter or others. Teter contends that Morris was both an agent of Indiana and a person liable for damages arising from the collision.

In order for Teter to prevail under this subpoint, it is necessary that he establish Morris as a person liable or who might be claimed liable and/or the agent of Indiana within the terms of the indemnifying agreement. As the trial court found, the indemnifying agreement defines Morris and Teter as claimants and not as persons within the classification of releasees. The argument itself affords no support for Teter's contention. The testimony relative to the intent of the parties also dispels Teter's contention. It should also be pointed out that the lease between Philp and Indiana expressly provided that Morris was the employee of Philp, not Indiana. In addition, the I.C.C. provision relied upon by Teter does not make Morris the driver of Indiana, but rather, intends the placement of leased vehicles on parity with owned equipment. 49 U.S.C.A. § 304(e)(2); *Brannaker v. Transamerican Freight Lines, supra.*

In addition, this court in *Transport Indemnity Co. v. Teter, supra,* declared that Transport had no obligation to defend Morris or to pay any judgment on his behalf. The indemnity agreement, in light of the evidence and this court's ruling in *Transport,* cannot be extended beyond the liability of Indiana and/or Transport. Again, the evidence, including the agreement, reveals that the agreement was drafted pertaining

to the liability of Philp and Indiana relative to the workmen's compensation claims of Teter and Morris. All other evidence forces the same conclusion. Subpoint (H) to point (1) is found to be without merit and is ruled against Teter.

Under subpoint (I), Teter contends that Morris is both a releasee and a claimant.

Teter takes exception to the trial court's ruling that Morris could not be at the same time both a claimant and a releasee under the terms of the agreement. Teter contends that the class "claimants" appears to be demonstrated in connection with the parenthetical phrase, "and, particularly on account of bodily injuries sustained by John Morris and James Teter, claimants, and any workmens compensation benefits due or claimed to be due them . . ."

From the above phrase, Teter argues that Morris is a releasee under that portion of the agreement which pertains to those classes of other persons who might become liable. In order for Teter to prevail (by placing Morris in the class of releasee), he must show that Morris comes within that class of other persons who might become liable, i.e., an unnamed, unidentified party since he (Morris) was not a party or signatory to the agreement. Teter urges this court to bring Morris within the term "releasee" upon the face of the agreement. The agreement does not lend itself to such an interpretation. In such instances, parol evidence is admissible, *State ex rel. Normandy, supra,* and the testimony upon this point dispels Teter's contention. The evidence, in fact, was quite to the contrary. Subpoint (I) to point (1) is found to be without merit and is ruled against Teter.

Under his final subpoint (J), Teter contends that "[i]n the second paragraph of its agreement, Travelers clearly and equivocally promises to protect, hold harmless and indemnify Indiana, Transport, Morris, and others from liability and loss for bodily injuries to Teter arising out of the collision."

This entire subpoint is premised upon Teter's assumption that Morris is included within the class of releasees within the agreement. Teter provides this court with a good analysis of indemnifying agreements as to loss versus indemnifying agreements as to liability, but this argument misses the point in the issue. The bottom line was best expressed by Teter in his brief when he declared that this court must review the indemnifying agreement and the facts and circumstances surrounding its execution for the purpose of determining "whether there existed an intent that Travelers undertake a duty to Morris."

This court concludes that the agreement was drafted to fix the respective responsibilities of Philp/Travelers and Indiana/Transport for the workmen's compensation claims of Teter and Morris. The agreement clearly does not extend beyond that issue. Second, the admissible evidence related to the intent of the framers of the agreement supports the argument that the agreement was limited to the workmen's compensation claims. Third, neither the agreement nor extrinsic evidence relative thereto places Morris within the class of releasee to the agreement. It must be concluded from the whole of the evidence that there existed no intent by Travelers to undertake any duty to defend Morris or to pay any judgment on his behalf. There is no merit to. subpoint (J) to point (1) and it is ruled against Teter.

▮ There is no merit to point (1), including subpoints (A), (B), (C), (D), (E), (G), (H), (I), and (J) thereof and the point is ruled against Teter.

Under his final point, Teter contends that the trial court erred in granting summary judgment because Travelers failed to show, by unassailable proof, that there was "not the slightest doubt as to the intent of the parties to the Indemnifying Release."

▮ Teter correctly points out that summary judgment is a drastic remedy. It must be shown on the record that there is no genuine issue of fact and the record must be viewed in the light most favorable to the party against whom summary judgment is entered. These principles are so deeply rooted in our law that it does not

require citation of numerous supporting authorities.

The record before this court reveals a stipulation of facts filed by the parties. Within that stipulation, there exists no dispute as to any material fact therein. After this stipulation of facts was filed, Travelers filed its motion for summary judgment based upon the stipulation, together with the pleadings and depositions previously filed. Teter's response to Travelers' motion covers some 42 pages and is restated in his brief on this appeal.

█ Teter asserts the existence of a genuine fact issue from the face of the indemnifying agreement. He offers essentially the same contention as noted above regarding the status of Morris as both releasee and claimant. It serves no purpose to repeat the discussion on this point and it suffices to say that on the face of the agreement there is no ambiguity giving rise to a fact question. When the intent of an instrument can be ascertained from its face, summary judgment is proper. *National Merchandising Corp. v. McAlpin,* 440 S.W.2d 489, 494 (Mo.1969). It is left to the trial court to construe the provisions of an agreement or contract. *Thurman v. K.L. Koenig Realty Company,* 423 S.W.2d 196, 200 (Mo.App.1967).

Teter's contention that a fact issue existed is premised upon his own conclusions and interpretation of the agreement. The agreement and the evidence admitted relative thereto do not support his conclusions and interpretations.

Teter's further contention that Morris was a third party beneficiary under the agreement likewise fails. The discussion of this contention is recited above and requires no repeating at this point.

Teter continues by alleging there are other "circumstantial factors" which make it likely that Transport and Indiana intended to assume responsibility for Morris. Teter contends that since Morris was driving the semi (for Philp) leased to Indiana, and since the I.C.C. law imposed responsibility on Indiana for operation of the truck, it would be difficult to see how Morris would not have been the agent of Indiana. This contention fails in light of the fact that there existed a lease between Philp and Indiana which designated Morris the employee of Philp, not Indiana. Secondly, this court in *Transport* has previously determined the question that Morris was the driver for Philp, not Indiana. In addition, the indemnity agreement reveals the intent of the parties thereto was to affix the liability of Indiana and Philp (and their insurers) as employers for purposes of workmen's compensation claims.

There existed no genuine fact issue as contended by Teter. Point (2) is found to be without merit and is ruled against him.

The judgment is affirmed.

All concur.