STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,

v.

Richard ALLEN, et al., Respondents.

No. 69575.

Supreme Court of Missouri,
En Banc.

Feb. 17, 1988.

Norman L. Chadwick, Poplar Bluff, for appellant.

Daniel T. Moore, Douglas R. Kennedy, Dale E. Nunnery, Michael M. Pritchett, Poplar Bluff, for respondents.

BLACKMAR, Judge.

Richard Allen was involved in a collision on June 12, 1984, while he was driving a 1979 Thunderbird automobile owned by Douglas Brown. He was sued for damages by members of the Davis family who were riding in the other car, by his passenger Larry Joe Gaddy, and by Brown for property damage. No liability insurance policy expressly covered the Thunderbird. Allen maintained a liability policy issued by plaintiff State Farm Mutual Insurance Company on a pickup truck which he owned. This policy contained provisions as follows:

The liability coverage extends to the use, by an insured, of a ... non-owned car.

. . . . .

Non–Owned Car—means a car not:

1. owned by,
2. registered in the name of, or
3. furnished or available for the regular or frequent use of:

you, your spouse, or any relatives.

The plaintiff insurance company filed a declaratory judgment action against Allen, Brown, Gaddy, and the Davis plaintiffs, seeking a declaration that the Thunderbird was "furnished or available for the regular or frequent use" of Allen, and that it was not obligated to defend the several suits against him or to pay any judgments or costs in those suits. The trial court found against the insurer and in favor of all defendants, thereby establishing coverage. The insurer appealed.

The Court of Appeals, Southern District, affirmed as to Gaddy and the Davises, reversed and remanded for further hearing as to Brown, and reversed as to Allen. It reached diverse results as to the several defendants because of its conclusion that some of the evidence was not admissible against all of the defendants. The insurer moved to transfer, asserting that the rights of the other defendants were dependent on a finding that the named insured, Allen, had coverage for the accident sued on and that the finding in its favor and against Allen precluded findings in favor of the other defendants. Taking the case as on original appeal, we find that the trial court's judgment in favor of Allen is supported by substantial evidence, and affirm.

**The Evidence**

Brown testified that at the time of the collision he had owned the Thunderbird for about a year. He usually kept the one set of keys in his pocket. The car was ordinarily kept at his home, which was about 18 miles from Allen's residence. The examination continued as follows:

Q. This car, did you furnish this car for Richard Allen's use?

A. No, sir.

Q. Was this car available at all times for his use?

A. No, sir.

Q. Before this accident in June, 1984?

A. No, sir.

. . . .

Q. Mr. Brown, how many times before this accident in June of '84 did Richard Allen use that car, your car?

A. Best of my knowledge three. Two or three or four times, maybe.

Q. What was the occasion for him using that car?

A. That particular day I was working on the one ton truck and I was greasy and dirty trying to replace some motor mounts.

Q. Okay. Did you have an agreement with him that he could use your car at any time?

A. No, sir.

Q. Did he get your permission that day of the accident?

A. Yes, sir.

Brown acknowledged that he and Allen were partners in a wood business. He said that there was an understanding that Mrs. Allen could use the Thunderbird in case of emergency, but remembered only one occasion on which she had actually used the car.

The plaintiff insurer, during its case in chief, sought to introduce into evidence the details of a taped statement made by Brown to Laverne Slinkard, claims representative for the insurer. The court sustained an objection, after which the plaintiff made the following offer of proof:

MR. CHADWICK: Yes, I understand, Your Honor. I wish to make a record, Your Honor. If this witness were allowed to testify concerning the statements, uhh, secured from Mr. Brown, that she would testify that she asked him how Mr. Allen came to be driving the car

involved and that he answered that he was using his pickup in the woods and he had to go to town to get some parts for another truck and he used my T–Bird to go into town and he was on his way back to the store. He was further asked, "Okay, you were using a pickup truck owned by Mr. Dick Allen? Yes. What kind of truck is that? '79 Ford. So, you had driven yourself out there to the woods that day, is that what you are saying? Yes. Did he have your permission to use the T–Bird? Yes, ma'am. Okay, you just left the keys with him? Yes. Is it pretty common he uses the T–Bird and you use the pickup whenever you need to? Yes, ma'am. But on this particular day you had his truck and he was using your T–Bird? Yes, ma'am."

Brown testified during the defendants' case. He said on cross-examination that he remembered having made a statement to Slinkard and admitted that it contained some of the details set out in the offer, but professed lack of memory as to some items. Slinkard was not called in rebuttal to confirm the entirety of the statement made to her by Brown.

Allen did not testify at the trial. The plaintiff called Allen's attorney, Stephen E. Walsh, to the stand, and questioned him about statements made by Allen to Slinkard in Walsh's presence. Walsh claimed that he did not have to respond to the questions by reason of the attorney-client privilege, and the court sustained him in this claim. Two statements by Allen, put in writing by Slinkard and signed by Allen, were received in evidence. The most important parts of these statements read as follows:

I am a partner in A & B Enterprises.... My partner is Doug Brown.... We formed this wood cutting business about 8 or 10 months ago, around October of 1983.... I ... sold [my] ... Pickup

sometime the end of June or 1st part of July [1984]. I didn't have any other vehicle in our household, and I just drove the T Bird, which is sort of like a company car. I was in the process of buying the car from [Brown] and I could use it any time I wanted to and had his permission to use it when I needed to.... [Just prior to the collision] I had been to town to pick up a set of brake shoes for the dump truck owned by Doug and used in our business, and I was on my way home to work on the truck. Doug was at my place waiting for me and he had given me permission to use the T Bird. The Thunderbird and the two trucks owned by Doug are all used in our business, which we share on a 50/50 partnership.

I ... sold the '79 Ford Pickup sometime the end of June or 1st part of July. Doug had a Van also and sometimes he used the T Bird, but most of the time after I made an agreement to sell my pickup, I just drove the T Bird. I did not have to pay Doug to use the T Bird. Douglas Brown let me use the T Bird whenever I wanted to or needed it and I drove it maybe once or twice a week since we started the wood business in October of 1983.

### The Basic Issue

■ The basic issue in the case is whether Allen was covered by his own policy while driving Brown's Thunderbird, or whether he is barred by the policy provision appropriately designed to require policyholders to purchase coverage on all of the vehicles they customarily use. Except to the extent that Allen has procured insurance covering his own liability, the other defendants have no rights in the premises. They are not third party beneficiaries under the contract between Allen and his insurer.[1] They may not sue the insurer directly, but are relegated to garnishment

1. *State ex rel. William Ranni Associates v. Honorable James R. Hartenbach,* 742 S.W.2d 134 (Mo. banc 1987); *Kansas City Life Ins. Co. v. Rainey,* 182 S.W.2d 624 (Mo.1944); *Volume Ser-*

*vices, Inc. v. C.F. Murphy & Assoc.,* 656 S.W.2d 785, 794 (Mo.App.1983); *Teter v. Morris,* 650 S.W.2d 277 (Mo.App.1982).

process directed against the insurer when and if they obtain judgment against Allen.[2] The theory of the garnishment action is that the insurer is in possession of a fund dedicated to the payment of judgments against the insured to the extent of the policy limits. *See* Section 379.195.1, RSMo 1986.

■ The tort claimants stand in the shoes of the insured. *See Greer v. Zurich Insurance Co.,* 441 S.W.2d 15 (Mo.1969), holding that judgment creditors have no claim against the insurer when the insured has prejudicially failed to give the insurer timely notice of the claim as required by the policy. It follows that evidence which is admissible against the insured is admissible against those whose rights against the insurer are based solely on the insured's policy. Claimants under the policy are in privity with the insured, and admissions by him may be received in evidence against them.[3] To the extent that *Dziadosc v. American Casualty Co.,* 114 N.J.L. 137, 176 A. 150 (1935) holds to the contrary, we do not follow it.

■ The court of appeals opinion would countenance an impossible situation in which Allen would have no coverage while his insurer would nevertheless have to respond to judgments against him. Such a holding would give Allen the equivalent of coverage because the insurer would necessarily have to defend actions in which it would be liable for payment of the judgment. We agree with the insurer that a finding that Allen had no coverage would bar claims of the other defendants against it.

It makes no difference that the insurer, instead of awaiting the judgments, brought a declaratory action against all known claimants. It is prudent for the insurer to include all claimants in its suit, because the insured may not pursue his rights diligently, and the claimants have every right to labor in support of his coverage. The insurer by proceeding as it has does not yield up any of its rights, nor does it cause the tort claimants' rights to rise higher than their source.

## The Finding of Coverage

We turn then to the question whether the trial court's judgment in favor of Allen is supported by the evidence.

The appellant insurer insists that the judgment is contrary to the "weight of the evidence," and therefore is subject to reversal under the rule of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The phrase just quoted should be read in context. The purpose of the rule is to give the findings of fact of the trial court the approximate effect of a jury verdict, especially when weighing and credibility are involved. There may be some confusion with the principle that a trial judge may set aside a jury verdict in a civil or criminal case and order a new trial on the ground that the verdict is against the weight of the evidence.[4] The power of the trial judge to do so is much broader than the power of an appellate court to substitute its judgment for that of the trial court in a case heard without a jury.

There is no precise formula for determining whether a vehicle is "furnished for the regular or frequent use of the insured." The question is purely factual, and the trier of fact must apply the policy language to the facts brought out in the evidence. *See State Farm Mutual Automobile Insurance Co. v. Western Casualty and Surety Co.,* 477 S.W.2d 421 (Mo. banc 1972).

---

2. *See State ex rel. Anderson v. Dinwiddie,* 224 S.W.2d 985 (Mo. banc 1949); *McNeal v. Manchester Ins. & Indem. Co.,* 540 S.W.2d 113 (Mo. App.1976); § 379.195, RSMo 1986; § 379.200, RSMo 1986; 7A Am.Jur.2d Automobile Insurance § 448 (1980).

3. *Gordon v. Oidtman,* 692 S.W.2d 349 (Mo.App. 1985); *Neely v. Kansas City Public Service Co.,* 252 S.W.2d 88, 241 Mo.App. 1244 (1952).

4. *Gentry v. Douglas,* 744 S.W.2d 788 (Mo. banc 1988) (decided today); *Campbell v. Kelley,* 719 S.W.2d 769 (Mo. banc 1986); Rule 78.02.

■ The trial judge could accept Brown's testimony. From this testimony he could properly find that any use of the Thunderbird by Allen required specific permission for the occasion, and that the automobile had been used no more than four times by Allen and once by Mrs. Allen. He could conclude that this did not demonstrate regular or frequent use. The effect of any impeachment of Brown through prior inconsistent statements was a matter for the trial judge to weigh. He apparently did not believe that Brown's testimony had been substantially impaired.

■ The plaintiff points to Allen's statement to Slinkard, and argues that Allen is bound by this statement because he did not take the stand to challenge it. We do not agree. A party has no obligation to testify, even on an issue on which he has the burden of proof. He may support his claim by other evidence. The statement to the claims representative is not a judicial admission in any sense.[5] Allen took some risk in proceeding as he did, and his failure to testify is a circumstance which the trial judge might properly weigh against him, but the judge was entitled to accept Brown's testimony and to disregard Allen's conflicting statements. In reaching his decision the judge might consider that the language of the statement was that of the claims representative and not that of Allen. There is also a minimum of quantitative information about Allen's use of the car in the statement and a lack of precision in the time elements. There was no offer of deposition testimony or interrogatory answers giving more precise information. The record shows a factual dispute. We are not willing to substitute our judgment for that of the trial court.

## Claimed Trial Error

■ The plaintiff argues that the trial judge erred in allowing Attorney Walsh to claim an attorney client privilege as to statements made by his client, Allen, in the presence of Walsh and the claims representative. The point is well taken. Allen cannot claim that he made a confidential communication when a third person representing an adverse interest was present.[6] Any error, however, is manifestly nonprejudicial. The full statement, in Slinkard's handwriting and signed by Allen, was marked as an exhibit and received in evidence. The attorney's testimony would add nothing to the statement.

■ Error is also claimed because the court refused to allow Slinkard to testify during its case in chief about Brown's out of court statements to her which are assertedly against Brown's interest. A party's admissions against interest may be received in evidence during the opponent's case, without calling the person making the admissions to the stand.[7] Here again, however, any error is without prejudice to the insurer. Brown was asked on cross examination about the alleged admissions against interest, and essentially confirmed making them. The insurer could have called Slinkard to testify if of the opinion that Brown was equivocating about what he had told her.[8] It would be fanciful to suggest that the trial judge might have reached a different conclusion if he had heard the admissions from Slinkard's lips during the insurer's case in chief.

It is seldom necessary to reverse the judgment in a court tried case and to remand the case for further hearing because of trial error. The appellate court is usual-

5. *Hewitt v. Masters,* 406 S.W.2d 60 (Mo.1966).

6. *State ex rel. Great American Ins. Co. v. Smith,* 574 S.W.2d 379 (Mo.1978); *Kratzer v. Kratzer,* 595 S.W.2d 453 (Mo.App.1980). Section 491.-060(3), RSMo 1986.

7. *Neely v. Kansas City Public Service Co.,* 252 S.W.2d 88, 241 Mo.App. 1244 (Mo.App.1952).

8. If the appellant had proceeded in the manner authorized by Rule 73.01(a)(1) for court-tried cases, and had made its offer of proof by asking Slinkard questions and receiving her answers, her authenticating testimony would be in the record for our consideration. It seems inconceivable to us, however, that the trial judge had any doubt that Brown made the statements set out in the offer.

ly able to examine the record and make or direct final disposition of the case. The appellant of course has the burden of demonstrating error, and here it has not done so to our satisfaction.

The judgment is affirmed in its entirety.

BILLINGS, C.J., and ROBERTSON, RENDLEN and HIGGINS, JJ., concur.

DONNELLY, J., dissents.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent.

Since all of the parties defendant in a declaratory judgment action such as this have an interest adverse to the plaintiff insurance company, I am at a loss to understand how this Court can find the trial court errors in denying the admission of plaintiff's tendered evidence to be so "manifestly nonprejudicial."

I would reverse.